STATE OF NORTH CAROLINA EX REL. RUFUS L. EDMISTEN, ATTORNEY GENERAL v. ZIM CHEMICAL COMPANY, INC., MELVIN TILLEM, PRESIDENT; THOMAS NOLAND, SALES MANAGER; JERRY WEASE, SALESMAN

No. 7910SC636

(Filed 18 March 1980)

1. **Unfair Competition § 1— failure properly to label antifreeze—misbranding—deceptive trade practice**

Defendant's failure properly to label drums of antifreeze constituted a misbranding under former G.S. 106-571(2), and such misbranding was a deceptive practice within the meaning of G.S. 75-1.1 as a matter of law.

2. **Unfair Competition § 1— deceptive acts in sale of antifreeze—restitution—delivery in S. C.—buyers who did not purchase directly from defendant**

In an action by the Attorney General to enjoin alleged deceptive acts and practices by defendant in the sale of purported antifreeze, the trial court did not err in ordering that defendant pay a restoration sum to a construction company which purchased purported antifreeze from defendant, although the antifreeze was actually shipped to South Carolina, where the invoice was mailed to the business address of the company in North Carolina. Nor did the court err in ordering defendant to pay restoration to four parties who bought antifreeze from two other companies that had purchased directly from defendant where the court ordered no restoration for the two direct purchasers from defendant. G.S. 75-15.1.

3. **Unfair Competition § 1— deceptive trade practices—restitution—return of worthless product unnecessary**

It was unnecessary for parties receiving restitution under G.S. 75-15.1 because of defendant's deceptive acts and practices in the sale of antifreeze first to return the drums of purported antifreeze to defendant where the record clearly showed that the antifreeze was useless and had no value.

4. **Interest § 2; Unfair Competition § 1— unfair trade practices—restitution—interest on judgment**

In an action by the Attorney General to enjoin defendant's deceptive acts and practices in the sale of antifreeze, interest on the court's judgment ordering defendant to make restoration payments to 33 customers was governed by G.S. 24-5 and should have been awarded only from the time of entry of the judgment, not from the date of filing of the complaint.

APPEAL by defendant Zim Chemical Company, Inc. from *Godwin, Judge*. Order signed 30 November 1978 and judgment signed 12 February 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 30 January 1980.

In 1974 Zim Chemical Company, Inc., a Georgia corporation, began selling in North Carolina what purported to be antifreeze. After being notified by William Cobb, the State Chemist with the North Carolina Department of Agriculture, that it had made sales without complying with N.C.G.S. 106-572, which required inspection and approval of the antifreeze before sale, Zim terminated all sales in North Carolina. The embargo placed by the North Carolina Department of Agriculture upon further sale of the antifreeze by Zim extended to Zim's customers, many of whom had purchased for resale.

In February 1975 the State of North Carolina filed a complaint against Zim, its president, its sales manager, and one of its salesmen, pursuant to Chapter 75 of the General Statutes, alleging that the antifreeze was sold without registration, that it was useless for its intended purpose, and that misrepresentations as to the quality of the antifreeze had been made by Zim's salesmen. The state alleged that these acts and practices were unfair and deceptive and in violation of N.C.G.S. 75-1.1. Zim denied the allegations of misrepresentation. Based on affidavits, discovery, stipulations, and other material, the trial court granted the state's motion for summary judgment on the issue of Zim's liability. A separate hearing was held to determine the measure of damages, after which the court entered judgment against Zim and the three individual defendants for $23,084.22 plus interest from the date the complaint was filed.

The three individual defendants subsequently moved that the judgment be set aside as to them, and Judge Godwin granted their motion. The state gave notice of appeal from the order setting aside the judgment as it applied to Melvin Tillem. The corporate defendant Zim Chemical appeals from both the entry of summary judgment against it on the liability issue and the monetary judgment. The state has abandoned its cross-appeal.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by Kenneth Wooten, Jr., and Gary S. Parsons, for defendant Zim Chemical Company, Inc.*

MARTIN (Harry C.), Judge.

Defendant Zim's first assignment of error is the trial court's granting the state's motion for summary judgment after finding that no genuine issue of material fact was in dispute as to Zim's liability. Zim argues that because it specifically denied the state's allegations of misrepresentation of the antifreeze and presented affidavits contradicting those offered by the state to support the allegations of misrepresentation, there is a genuine issue of material fact for trial. We find this argument unpersuasive.

It is unnecessary that we decide whether a genuine issue is presented as to whether Zim's sales personnel misrepresented the properties of the antifreeze to its customers by making statements as to its permanency, chemical makeup, or effectiveness in comparison to leading brands. It is an uncontroverted fact in this case that Zim failed to properly label the drums of antifreeze which it sold in North Carolina after purchase from a manufacturer.

Affidavits submitted by plaintiff to support its motion for summary judgment tend to establish this fact. Jerry Walker, a purchaser of fifteen drums of the antifreeze, stated in his affidavit: "The drums of antifreeze did not include labels setting out the formula or ingredients. Some of the drums contained a Zim Chemical Company shipping label and others did not contain a label. Some contained a sticker that stated ANTIFREEZE SOLUTION."

J. D. Turner, another purchaser from Zim, stated: "The containers did not indicate the chemical contents, but was labeled 'Antifreeze' with a Zim Chemical Company shipping label attached."

Affidavits offered by Zim do not contradict these assertions. Melvin Tillem, in the fall of 1974 vice-president of Zim and in charge of sales, stated in his affidavit: "Zim did not attempt to label the product, other than to perhaps place its own shipping label on it giving its name and address and any other label placed upon it would have been done by the manufacturer." In addition, plaintiff's second set of interrogatories served upon defendant contains the following question and response:

2. (a) Were there labels on the drums of antifreeze sold to North Carolina purchasers?

(b) If so, what information was contained on the label?

2. Yes. The defendants do not have in their possession a label such as was used on the drums of antifreeze purchased by customers in North Carolina. Essentially, however, the label would have revealed that the product was antifreeze and probably would have contained some language that it should be kept out of the reach of children as well as other standard cautionary language for hazardous materials. It would also show that the contents of the drums were 55 gallons.

[1] N.C.G.S. 106-571, which was in effect at the time of sale of the antifreeze, contained the following language:

Misbranding; what constitutes.—An antifreeze shall be deemed to be misbranded:

.   .   .   .

(2) If in package form it does not bear a label containing the name and place of business of the manufacturer, packer, seller or distributor; and an accurate statement of quantity of the contents in terms of weight or measure, and they are not plainly and correctly stated on the outside of the package or container.

Upon application of this statute to the facts in this case, we find that defendant's failure to properly label the drums of antifreeze constitutes a misbranding. "Misbrand" is defined as "to brand falsely or in a misleading way." We think, therefore, and so hold that defendant's misbranding of the antifreeze, which is undisputed, is a deceptive practice within the meaning of N.C.G.S. 75-1.1 as a matter of law. On the issue of defendant's liability, there is no genuine issue of material fact and summary judgment for plaintiff was appropriate. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Defendant's first assignment of error is overruled.

Zim places great reliance on its good faith in this undertaking, contending that it is uncontradicted that Zim bought and sold what it believed to be good-quality antifreeze, that sales of the

product were halted immediately when Zim was informed the North Carolina inspection law had been violated, and that tests for quality were then conducted. Zim argues these facts "could scarcely be considered a breach of ethics or 'good faith' on the part of the Defendant, nor do they materially fall within the category of 'unfair or deceptive acts or practices.'"

We think that under the facts and circumstances of this case, the good faith argument by defendant is to no avail. Here, the failure to label the drums properly is statutorily *deemed* to be a misbranding, which we in turn declare to be deceptive as a matter of law.

[2] Zim makes two assignments of error relative to specific recipients of restoration sums under the court's order. We find no merit in these assignments of error.

The court awarded $807.75 to Geymont Construction Co. Zim argues that because the antifreeze sold to Geymont was actually shipped to Greer, South Carolina, the purchase was made outside North Carolina and is therefore not within the purview of N.C.G.S. 75-1.1(b) as then written. The record shows that the invoice to Geymont was mailed to Vale, North Carolina, the business address of the company. Moreover, as the state correctly points out, the parties had stipulated "[t]hat the particulars of the sales of antifreeze which are the subject of this Complaint are set out in Appendix A." Geymont Construction Co. is included in the list of buyers from Zim set out in Appendix A. The trial court did not err in ordering restoration to Geymont Construction Co.

The court also awarded $209 to each of four parties included in the list of thirty-three purchasers from Zim. Zim argues that these four bought antifreeze not directly from it, but indirectly from two other companies that had purchased directly from Zim. Its contention is that because Zim had no contractual agreements with the four parties and received no money or property from them, restoration ordered by the court to them was not within the purview of N.C.G.S. 75-15.1 and therefore error.

We agree with the state's position that the court properly awarded restitution to these indirect purchasers from Zim. The court found as a fact that Zim sold, directly or indirectly, to thirty-three named purchasers. The state had not sought restora-

tion for two direct purchasers, Pilot Freight Carriers and Strong Tire Co. These two companies had resold the antifreeze at a profit to four subsequent buyers. The court in effect transferred the restoration due Pilot and Strong to their subsequent buyers, who had suffered actual losses. Defendant's assignment of error is overruled.

[3] Zim further assigns as error the court's "ordering the defendant Zim to return the money received under the agreement without first finding as a fact that the purchasers had made a tender of restoration of defendant's consideration or without including it as part of the order upon final judgment." We agree, however, with the state's counterargument that it was unnecessary that the thirty-three parties receiving restitution be ordered to return the drums of useless antifreeze to Zim. The record clearly shows that the antifreeze had no value. "The plaintiff need not tender back what he got in the transaction if it is utterly worthless, . . . .." Dobbs, Handbook on the Law of Remedies 295 (1973). This assignment of error is also overruled.

[4] Finally, Zim assigns as error the court's awarding interest from the date of filing of the complaint. It argues that interest should have been awarded from the time of entry of judgment. The two relevant applicable dates are 26 February 1975 and 12 February 1979, a difference of four years. We think Zim must prevail on this assignment of error.

Although it cannot be denied that Zim contracted with its individual purchasers for the sales of antifreeze, this action was not brought as a suit upon a contract for damages sustained as a result of a breach. The Attorney General of North Carolina initiated the action pursuant to N.C.G.S. 75-15. Under the provisions of N.C.G.S. 75-15.1, the presiding judge is authorized to order restoration of money upon a final determination of the cause. This is precisely what was done in this case. This statute, however, does not expressly provide for an interest award.

We think that this judgment is covered by the second sentence of N.C.G.S. 24-5:

> In like manner, the amount of any judgment or decree, except the costs, rendered or adjudged in any kind of action, though not on contract, shall bear interest till paid, and the

judgment and decree of the court shall be rendered according to this section.

The first sentence of N.C.G.S. 24-5, to which the phrase "in like manner" in the second sentence refers, contains the provision that "the principal sum due on all such contracts shall bear interest *from the time of rendering judgment thereon*." (Emphasis added.) Although in construing this provision the rule in North Carolina has been that interest should be allowed from the date of breach, this rule is applicable only when the action is one for breach of contract. *General Metals v. Manufacturing Co.*, 259 N.C. 709, 131 S.E. 2d 360 (1963). Because the case *sub judice* was not brought as a breach of contract action, this rule does not apply and interest should have been awarded from the time of entry of judgment. The court erred in awarding interest from the date of filing of the complaint.

Affirmed in part. Remanded to the Superior Court of Wake County for modification of the interest award.

Chief Judge MORRIS and Judge HILL concur.