**FEDERAL TRADE COMMISSION**

v.

**MYLAN LABORATORIES, INC., Cambrex Corp., Profarmaco S.R.L., and Gyma Laboratories of America, Inc.**

Nos. 98–3114 (TFH), 98–3115(TFH).

United States District Court,
District of Columbia.

Dec. 14, 1999.

Richard A. Feinstein, Bureau of Competition, Federal Trade Commission, Washington, DC, for Federal Trade Commission, State of Connecticut.

Steven A. Newborn and Joseph J. Simons of Clifford, Chance, Rogers & Wells, LLP, Washington, DC, Kevin J. Arquit and John K. Carroll of Rogers & Wells, LLP, New York City, for Mylan Laboratories, Inc.

Timothy K. Beeken, Charles D. Atkins of Debevoise & Plimpton, New York City, Ann M. Ashton, Jonathan R. Tuttle of Debevoise & Plimpton, Washington, DC, for Cambrex Corp. and Profarmaco S.R.L.

Peter D. Isakoff, David A. Hickerson of Weil, Gotshal & Manges, L.L.P., Washing-

ton, DC, for Gyma Laboratories of America.

## *OPINION*

THOMAS F. HOGAN, District Judge.

The above-captioned cases are actions by the Federal Trade Commission (FTC) and thirty-three States against Mylan Laboratories and other drug companies for various federal and state law antitrust violations. On July 7, 1999, this Court issued a Memorandum Opinion granting in part and denying in part defendants' motions to dismiss [1999-2 TRADE CASES ¶ 72,573]. The Opinion addressed issues of federal law and the various antitrust and consumer protection laws of the plaintiff states. Sixteen of the plaintiff states have moved for reconsideration of the Court's ruling in respect to various issues decided under their state laws.[1] Two of the states seeking reconsideration–Ohio and Kentucky– have also asked this Court to certify the questions of state law to their highest state courts. After careful consideration of plaintiffs' motion and the opposition thereto, the motion will be granted in part and denied in part.

## I. BACKGROUND

The plaintiff states request that this Court reconsider a number of its rulings in respect to the states' antitrust and consumer protection laws. The states seeking reconsideration argue that: (1) the interpretation of the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), relied on in the July 7, 1999 Memorandum Opinion, conflicts with the Supreme Court's subsequent ruling in *California v. ARC America Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989); (2) the Court mistakenly dismissed various state claims for equitable monetary relief in light of the Court's ruling on Idaho's claims under the

Idaho Consumer Protection Act (ICPA); and (3) the Court mistakenly dismissed various state damages claims on behalf of both direct and indirect purchasers. The Court will address these arguments generally, and then apply that discussion to the individual state statutes.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 54(b), a party may seek to revise an order or other form of decision "at any time before the entry of judgment adjudicating all of the claims and the rights and liabilities of all of the parties." Fed.R.Civ.P. 54(b). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa.1995). Nevertheless, "[i]t is clear ... that there are circumstances when a motion to reconsider may perform a valuable function." *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983). In such circumstances, a Rule 54(b) motion can operate as the proper mechanism "for correcting errors and preventing injustice." *United States ex rel. Houck v. Folding Carton Admin. Committee*, 121 F.R.D. 69, 70 (N.D.Ill.1988).

### B. Substantive Arguments

#### 1. *Illinois Brick and ARC America*

The plaintiff states seeking reconsideration argue that this Court adopted an overly expansive interpretation of the Supreme Court's decision in *Illinois Brick*. The states argue that this Court held that *Illinois Brick* in effect pre-empted state laws addressing the rights of indirect purchasers, in violation of the principles set forth

---

**1.** The states moving for reconsideration are Alaska, Arkansas, Connecticut, Florida, Kentucky, Louisiana, Maine, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, Vermont and West Virginia. The remaining plaintiff states support this motion.

by the Supreme Court in *California v. ARC America Corp.*

The states' argument is based on a misunderstanding of both *ARC America* and this Court's Memorandum Opinion. *ARC America* addressed the preemptive effect of *Illinois Brick's* decision to deny standing to indirect purchasers under the Clayton Act. The issue was whether those states that had passed statutes expressly granting standing to indirect purchasers (so-called *"Illinois Brick* repealer statutes") could enforce those statutes in light of the federal adoption of the indirect purchaser doctrine. *See ARC America,* 490 U.S. at 100, 109 S.Ct. 1661. The Supreme Court held that they could, as the decision in *Illinois Brick* was not intended to have a preemptive effect on the state's ability to craft and enforce their own antitrust laws. *Id.* at 105–06, 109 S.Ct. 1661.

Contrary to plaintiffs' argument, the *ARC America* Court did not hold that state courts were forbidden from relying on *Illinois Brick* as persuasive authority for how a state should interpret its antitrust regime. As noted by the Florida Court of Appeals:

[*ARC America* ] is not to say that the concerns raised in *Hanover Shoe[, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968)]* and *Illinois Brick* –the difficulties of tracing overcharges through a distribution chain, the possibility of multiple liability for defendants, and the prospects· of inconsistent or duplicate federal and state judgments–are not valid policy considerations under state antitrust or deceptive trade practice statutes. *ARC America* simply declines to impose on each state the federal legisla-

tive antitrust policy of deterring violations by simplifying antitrust litigation. *Mack v. Bristol–Myers Squibb,* 673 So.2d 100, 107–08 (Fla.App.1996) *review dism'd,* 689 So.2d 1068 (Fla. Jan.31, 1997). Indeed, a number of courts have looked to *Illinois Brick* to determine the scope and structure of state antitrust laws. *See, e.g., Boos v. Abbott Labs.,* 925 F.Supp. 49 (D.Mass.1996); *Stifflear v. Bristol–Myers Squibb Co.,* 931 P.2d 471 (Colo.Ct.App. 1996); *Abbott Labs. v. Segura,* 907 S.W.2d 503 (Tex.1995). The fact that this Court similarly sought guidance from *Illinois Brick's* discussion of antitrust policy does not conflict with the Supreme Court's ruling in *ARC America.* Thus, insofar as the states have asserted that this Court's interpretation of *Illinois Brick* was improper, their motion is denied.

### 2. State Restitution Claims

█ A number of states ask this Court to reconsider its rulings disallowing state restitution claims. This Court dismissed a number of state restitution claims on the basis that the law of those states prompts courts to look to federal law in interpreting their unfair competition and consumer protection statutes, and the Clayton Act does not authorize restitution. *See FTC v. Mylan Laboratories,* 62 F.Supp.2d 25, 41 (D.D.C.1999). The Court allowed Idaho's claim under the Idaho Consumer Protection Act (ICPA) to stand, however, on the basis that Idaho law prompts courts to consider decisions interpreting § 5(a)(1) of the FTC Act, rather than the Clayton Act. *See* Idaho Code § 48–604(a). As this Court had already held that the FTC could pursue equitable remedies such as disgorgement, the Court reasoned that Idaho should be permitted to pursue similar kinds of equitable relief under the ICPA.[2]

**2.** It should be noted that no court, including this one, has held that the FTC may pursue restitution claims on behalf of indirect purchasers. Although this Court did authorize the FTC to seek disgorgement under § 13(b) of the Act, *see* Mem. Op. at 12–13, and at least one other court has permitted the FTC to pursue restitution, *see FTC v. Security Rare*

*Coin,* 931 F.2d 1312 (8th Cir.1991), no court has addressed the specific issue of restitution on behalf of indirect purchasers. The only guidance in this area, then, are the principles for interpreting the remedial powers of a *district* court set forth in the *Porter v. Warner* line of cases. *See Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332

Alaska, Connecticut, Florida, South Carolina, Vermont and West Virginia have asked this Court to reconsider its rulings under the laws of those states in light of the fact that they too prompt courts to consider the FTC Act when interpreting the state statutes. Other states have moved for reconsideration on the ground that, although their state statutes do not explicitly reference the FTC Act, the structure and purpose of the state statutes suggest that they should be interpreted in a similar manner.

The states are correct that there is an internal inconsistency between the Court's ruling on Idaho law and its rulings in respect Alaska, Connecticut, Florida, South Carolina and Vermont. The Court also finds that this inconsistency extends to other states whose statutes, though not explicitly referencing the FTC Act, permit the state to proceed in equity. Thus, the Court will reassess its rulings in respect to state statutes that explicitly reference, or are modeled after, the FTC Act, or that otherwise permit the state to pursue equitable remedies.

### 3. Individual State Law Claims

#### Alaska

■ Alaska's Unfair Trade Practices and Consumer Protection Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful." Alaska Stat. § 45.50.471(a). The Alaska Act empowers the Alaska Attorney General to bring unfair competition and consumer protection actions under § 45.50.471. That statute states that "[w]hen the attorney general has reason to believe that a person has used 'an act or practice declared unlawful in AS 45.50.471 the attorney general may bring an action in the name of the state against the person to restrain the act or

practice.'" Alaska Stat. § 45.50.501(a). Alaska law further provides that "[i]n interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. § 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act)." *Id.* § 45.50.545. Given this authority, the Court finds that Alaska is entitled to the full panoply of remedies that would be available to the FTC under the FTC Act. The Court will therefore reinstate Alaska's claim for restitution on behalf of indirect purchasers.

#### Arkansas

■ Arkansas requests reconsideration of this Court's decision to dismiss Arkansas' claims for restitution for indirect purchasers under the Arkansas Deceptive Trade Practices Act, Ark. Stat. Ann. § 4–88–101 *et seq.* (ADTPA). Under the ADPTA, the Attorney General may bring suit "for civil enforcement of the provisions of [the Act], including, but not limited to, the seeking of restitution ..." Ark. Stat. Ann. § 4–88–104. The Court will therefore grant Arkansas' motion for reconsideration, and reinstate its claim for restitution on behalf of indirect purchasers.

Arkansas' motion to reconsider its claim for damages on behalf of indirect purchasers under the ADPTA will be denied. The ADPTA does not provide for damages, and Arkansas has cited no authority for the proposition that Arkansas can pursue damages' under the Act.

#### Connecticut

■ Under the Connecticut Unfair Trade Practices Act (CUTPA), the state (through the Attorney General or the Commissioner of Consumer Protection) may seek injunctive relief for violations of the Act. *See* Conn. Gen.Stat. § 42–110m. In addition, the CUTPA provides that courts construing CUTPA "shall be guided

(1946); *Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288, 291–92, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *see also* Mem. Op. at 11–12. In light of the expansive view of a court's equitable

jurisdiction espoused in the *Porter* cases, the Court will assume that the FTC does have the authority to seek such relief.

by interpretations given by the Federal Trade Commission 5(a)(1) of the Federal Trade Commission Act ..." Conn. Gen. Stat. § 42–110b(b). The Court will therefore reinstate Connecticut's claim for restitution on behalf of indirect purchasers.

*Florida*

■ Florida's claims for restitution under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) will be reinstated. That statute explicitly provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act ..." Fla. Stat. § 501.204(2). Furthermore, the broad remedial language of the Florida Act suggests that the Florida Legislature intended to provide a full range of equitable monetary relief. *See id.* § 501.207. The Court will therefore reinstate Florida's restitution claims on behalf of both direct and indirect purchasers.

*Kentucky*

■ Kentucky seeks reconsideration of the dismissal of its claim for restitution on behalf of indirect purchasers. The Kentucky Consumer Protection Act gives the state authority to bring such a suit. *See* KRS 367.200; *Commonwealth of Kentucky ex. rel. Beshear v. ABAC Pest Control, Inc.,* 621 S.W.2d 705 (Ky.App.1981). In the Memorandum Opinion, the Court dismissed Kentucky's claim based on several recent cases holding that "[t]he legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act." *Skilcraft Sheetmetal, Inc. v. Kentucky Machinery, Inc.,* 836 S.W.2d 907, 909 (Ky. App.1992); *see also Kentucky Laborers District Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.,* 24 F.Supp.2d 755 (W.D.Ky.1998); *Anderson v. National Sec. Fire and Casualty Co.,* 870 S.W.2d 432, 436 (Ky.App.1993). Upon the benefit of further briefing, the Court

has determined that those cases apply only to the section of the KCPA authorizing a private right of action, Ky.Rev.Stat. Ann. § 367.220, and not to actions brought by the Attorney General under § 367.190. Kentucky's claim for restitution on behalf of indirect purchasers will therefore be reinstated.

*Louisiana*

■ Louisiana moves this Court to reconsider the dismissal of its claims under the Louisiana Monopolies Act, La.Rev. Stat. Ann. §§ 51:121 *et seq.* The July 7, 1999 Order in this case contained a scrivener's error dismissing Louisiana's claim for damages on behalf of direct purchasers under the Monopolies Act. That claim is reinstated.

Upon the benefit of further briefing, the Court will also reinstate Louisiana's claims for equitable monetary relief under La. Rev.Stat. Ann. § 51:128. That section authorizes Louisiana, through its Attorney General, to sue for violations of the Monopolies Act. *See State v. Classic Soft Trim, Inc.,* 663 So.2d 835, 835 (La.App. 5th Cir.1995). Section 128 does not limit the state's ability to pursue the full range of equitable relief. The Court will therefore grant Louisiana's motion and permit the state to pursue claims for restitution on behalf of both direct and indirect purchasers.

The Court will not reinstate Louisiana's claim for damages as an indirect purchaser, or on behalf of indirect purchasers, under § 137 of the Monopolies Act. Section 137 grants standing to "any person" who suffers an antitrust injury. *See* La.Rev. Stat. Ann. § 51:137. In *Free v. Abbott Laboratories,* 176 F.3d 298, 299 (5th Cir. 1999), the Fifth Circuit looked to the policy considerations underlying *Illinois Brick* and found that indirect purchasers do not have standing under § 137. Although Louisiana urges this Court to disregard the Fifth Circuit's conclusion, this Court will not ignore the holding of a federal appellate court in a case directly on point.

The Court will therefore deny Louisiana's motion to reconsider its ruling on indirect purchaser standing under § 137.

Louisiana also moves this Court to reconsider its rulings under the state's Unfair Trade and Consumer Protection Act. Louisiana's claims for restitution on behalf of direct and indirect purchasers are reinstated, pursuant to La.Rev.Stat. Ann. §§ 51:1407–1408, and the decision in *Classic*, 663 So.2d at 835. Louisiana's claim for damages on behalf of direct purchasers under the Act will also be reinstated, as the Louisiana Attorney General has *parens patriae* authority to bring antitrust actions on behalf of state citizens. *See State v. Bordens*, 684 So.2d 1024, 1026 (La.App. 4th Cir.1996). The state's claim for damages on behalf of indirect purchasers under the Act will not be reinstated, however, as to do so would provide an end run around the Fifth Circuit's decision in *Free*. As stated by the Fifth Circuit in a similar context, a court should not interpret a state's antitrust laws "in a manner that rewards creative pleading at the expense of consistent application of legal principles." *Segura*, 907 S.W.2d at 506. Thus, Louisiana's motion to reinstate its damages claim on behalf of indirect purchasers under the Unfair Trade and Consumer Protection Act will be denied.

*Maine*

■ Maine's claims for restitution on behalf of both direct and indirect purchasers under the Maine Unfair Trade Practices Act (UTPA) are reinstated. The Maine UTPA is modeled on the FTC Act, and is explicitly required to be construed consistent with its federal counterpart. *See* 5 M.R.S.A. § 207(1); *see also Bartner v. Carter*, 405 A.2d 194, 199–200 (Me. 1979)("[i]t is apparent that in enacting the [UTPA] ... the Legislature ... envisioned the Maine Attorney General as being in a position comparable to that of the [FTC] with respect to ... enforcing it").

Maine's claim for damages under its Monopolies or "mini-Sherman" Act presents a more difficult issue. 10 M.R.S.A. § 1104. Although Maine is expressly authorized to sue for damages for direct and indirect purchases made by the state itself, the issue is whether Maine may sue *parens patriae* on behalf of other purchasers. In *Maine v. M/V Tamano*, 357 F.Supp. 1097, 1099–1100 (D.Me.1973), the district court held that Maine may recover damages in a *parens patriae* capacity only when it has a "quasi-sovereign interest" in the suit. The court defined a "quasi-sovereign interest" as "an interest of the State independent of and behind titles of its citizens, that is ... the State must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest." *Id.* at 1100 (citations omitted). It is difficult to see why Maine has an independent state interest in this action when the goals of compensation and deterrence can already be achieved–for both direct and indirect purchasers–under the private right of action established by 10 M.S.R.A. § 1104(1). On the other hand, the *M/V Tamano* decision is based on an interpretation of federal common law, and therefore would not appear to bind a Maine court addressing questions of state law. At least one state case suggests that the powers of the Maine Attorney General are sufficiently broad to encompass a *parens patriae* action on behalf of indirect purchasers. *See Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 558 (1973) ("As the chief law officer of the State, [the Maine Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights"). The Court will therefore reinstate Maine's claims for damages on behalf of indirect purchasers under the Maine Monopolies Act.

*North Carolina*

■ North Carolina asks this Court to reconsider its ruling dismissing the state's

claim for restitution on behalf of indirect purchasers, North Carolina argues that *State ex rel. Edmisten v. Zim Chemical Co., Inc.,* 45 N.C.App. 604, 263 S.E.2d 849 (1980), establishes that restitution is an available remedy for the Attorney General to obtain on behalf of indirect purchasers. This Court agrees with defendants that *Edmisten* does not stand for this proposition. The court in *Edmisten* upheld relief for indirect purchasers because the trial court had "in effect transferred the restoration due Pilot and Strong [direct purchasers] to their subsequent buyers, who had suffered actual losses." *Id.* at 851. Thus, *Edmisten* does not stand for the general proposition that indirect purchasers have standing under North Carolina's combined antitrust and consumer protection law, N.C.G.S. §§ 75–1 *et seq.*

Pointing in the other direction is *Hyde v. Abbott Laboratories, Inc.,* 123 N.C.App. 572 (1996). The *Hyde* court rejected *Illinois Brick* as a guide for interpreting § 75–16, which supplies a private cause of action for antitrust and consumer protection violations. Given that the policy considerations underlying *Illinois Brick* are at their strongest in the context of statutes providing for private enforcement, North Carolina is correct that, in light of *Hyde,* these considerations should not be brought to bear on suits by the state Attorney General under § 75–15. North Carolina's claim for restitution on behalf of indirect purchasers will therefore be reinstated.

*Ohio*

■■■ Ohio's motion for reconsideration is predominately concerned with the issue of whether this Court should certify the question of indirect purchaser standing to the Ohio Supreme Court. Based upon this Court's review of Ohio law, and consistent with the principles set forth in this Opinion, the Court will forego certification and reinstate Ohio's claims for restitution on behalf of indirect purchasers. This is an action brought by the Ohio Attorney General pursuant to his or her powers under Ohio Rev.Code Ann. § 109.81 and

§ 1331.01 *et seq.* In addition, § 1331.01(B)(5) prohibits conduct that "directly or indirectly ... preclude[s] a free and unrestricted competition among [corporations]." The Court therefore finds that the Ohio Attorney General is authorized to seek restitution on behalf of indirect purchasers.

The Court will not reinstate Ohio's claims for damages on behalf of indirect purchasers, Based on this Court's review of Ohio law, Ohio's damages claim on behalf of indirect purchasers falls under § 1331.08, which pertains to any "person injured." The Ohio Attorney General can sue under § 1331.08 through the authority vested in that officer by § 109.81(A), but it is not clear that the Attorney General is entitled to remedies beyond those generally available to private parties. The Court will therefore deny Ohio's motion to reconsider this issue. Because this Court has already reinstated Ohio's claim for restitution, it will decline to certify any questions to the Ohio Supreme Court at this time. Ohio may renew its motion for certification on the damages issue if it so desires.

*Oklahoma*

■■■ Oklahoma asks this Court to reinstate its claims under the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.* based on the plain language of the statute. The relevant provision, 15 O.S. § 756.1(C)(2), states:

C. In any action brought by the Attorney General or a district attorney, the court may:

\* \* \* \* \* \*

2. Make such orders or judgments as may be necessary to compensate any person for damages sustained.

The concerns surrounding the Oklahoma statute are identical to those the Court addressed in respect to the Arkansas Deceptive Trade Practices Act. *See supra* at 5–6. The Court will therefore reach the same result, and reinstate Oklahoma's claim for restitution on behalf of indirect purchasers.

The Court will not, however, reinstate Oklahoma's damages claim on behalf of indirect purchasers. Section 756.1(C)(2), the statute cited by Oklahoma in it motion for reconsideration, does not provide for damages. Although § 756.1(A)(3) permits the Attorney General to seek actual damages, Oklahoma did not cite that section and, in any event, it is limited to "individual action[s] only."

### South Carolina

■ South Carolina's claim for restitution on behalf of indirect purchasers under the South Carolina Unfair Trade Practices Act will be reinstated. Section 39–5–50 of the Act authorizes the Attorney General to proceed in equity. Additionally, § 39–5–20(b) provides that courts interpreting the Act "be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act ..." S.C.Code Ann. § 39–5–20(b). The Court will therefore reinstate South Carolina's claim for restitution on behalf of indirect purchasers under the South Carolina UTPA. South Carolina has not asked this Court to reconsider its dismissal of the damages claim on behalf of indirect purchasers. That claim will therefore not be reinstated.

### Tennessee

■ Tennessee's claims under the Trade Practices Act (the "TPA") and the Tennessee Consumer Protection Act (the "TCPA") will not be reinstated. Under Tennessee law, "the current rule is that Tennessee's prohibition on restraints of trade will apply to transactions which are 'predominately' intrastate in character." *Dzik & Dzik, P.C. v. Vision Service Plan,* 1989 WL 3082 (Tenn.Ct.App.1989). The states' complaint in this case alleges a price-fixing conspiracy that operated on a national level and affected at least 32 states. The allegations therefore concern conduct that was predominately interstate, and outside the ambit of Tennessee's antitrust laws. The case relied upon in Tennessee's motion for reconsideration, *Blake*

*v. Abbott Laboratories,* 1996 WL 134947 (Tenn.Ct.App.1996), in fact supports this Court's prior ruling. Tennessee's motion will therefore be denied.

### Texas

Texas asks this Court to correct the Memorandum Opinion insofar as it states that Texas is "required" to follow federal law in the interpretation of the Texas Free Enterprise and Antitrust Act. Under Texas law, the Act "shall be construed in harmony with federal judicial interpretation of comparable federal antitrust statutes to the extent consistent with [the Act's] purpose." Tex. Bus. & Comm.Code § 15.04. The Court will grant Texas' request to substitute the language of § 15.04 for the word "required" in the Memorandum Opinion.

### Utah

■ Utah's claims for restitution under the Utah Antitrust Statute, Utah Code Ann. § 76–10–911 *et seq.,* will be reinstated. Section 76–10–918 empowers the Attorney General to proceed in equity for injunctive relief, and § 76–10–926 provides that "the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes ..." As the cause of action authorized by § 76–10–918 is a public one that must be brought by the Utah Attorney General, the FTC Act is a "comparable federal antitrust statute." Thus, Utah's claims under § 76–10–918 for restitution are reinstated.

Utah's claim for damages on behalf of indirect purchasers presents a more difficult question. Although § 76–10–918 authorizes the Utah Attorney General to pursue a damages action in the name of the state or in a *parens patriae* capacity, that action falls under Utah's equivalent of the Clayton Act, § 76–10–919. That section does not expressly provide for indirect purchasers, and no Utah court has authorized such an action. Based on the principles articulated in *Illinois Brick,* then, the

Court will find that § 76–10–919 does not confer standing on indirect purchasers. The Court will therefore decline to reinstate Utah's claim on their behalf.

*Vermont*

 Vermont asks this Court to reconsider its decision dismissing it claims for restitution and damages on behalf of indirect purchasers. The Vermont Consumer Fraud Act empowers the Vermont Attorney General to proceed in equity and obtain restitution for violations of the Vermont Act. *See id.* § 2458. The Vermont Act also provides that courts should construe the Act in light of federal court interpretations of the FTC Act. *See* 9 V.S.A. § 2453(b). Vermont's claim for restitution on behalf of indirect purchasers will therefore be reinstated.

The Court will not reinstate Vermont's claim for damages on behalf of indirect purchasers. In *Vermont v. Densmore Brick Co.*, No. 78–297, 1980 WL 1846 (D.Vt. Apr.10, 1980), Vermont brought an action *parens patriae* for all Vermont residents who had purchased woodburning stoves from the defendants during a certain time period. The action was also brought on behalf of the State of Vermont and all Vermont residents. The court found that *"Illinois Brick* stands for the proposition that an antitrust plaintiff suing to eliminate a price-fixing scheme may sue only his direct supplier and any co-conspirators, not some supplier further up the chain of distribution." *Id.* at *4. This led to the conclusion that "the *Illinois Brick* decision requires plaintiff to allege purchases directly from the alleged price-fixing conspiracy between [supplier] and its Vermont ... dealers." *Id.* Thus, under Vermont caselaw, Vermont can seek damages only for those citizens who were direct purchasers. Vermont's motion for reconsideration of the damages claim will therefore be denied.

*West Virginia*

 West Virginia asks this Court to reconsider its rulings under the West Virginia Consumer Credit and Protection Act (the "CCPA"). Under the CCPA, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va.Code § 46A–6–102. Trade or commerce "means the advertising, offering for sale, or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state." *Id.* § 46A–6–102(e). The "Attorney General may bring a civil action to restrain a person from violating this chapter and for other appropriate relief." *Id.* § 46A–7–108. Finally, the CCPA provides that the Court should construe the Act according to "the interpretation given by the federal courts to the various federal statutes dealing with [unfair competition and unfair, deceptive and fraudulent acts or practices]." *Id.* § 46A–6–101(1). Based on these provisions, the Court will reconsider its previous ruling and reinstate West Virginia's claims for restitution under the CCPA on behalf of both direct and indirect purchasers.

*4. Certification*

Ohio and Kentucky have requested that this Court certify the question of indirect purchaser standing to their highest state courts. Both states' claims for restitution on behalf of indirect purchasers will be reinstated, so those portions of the motion are now moot. Insofar as Ohio seeks certification of its claim for damages on behalf of indirect purchasers, that motion will be denied without prejudice in accordance with the above.

**III. CONCLUSION**

An appropriate Order accompanies this Memorandum Opinion.

## Appendix A
### Remaining State Law Claims

| | Injunctive Relief | Restitution Indirect Purchaser | Restitution Direct Purchaser | Damages Indirect Purchaser | Damages Direct Purchaser | Civil Penalties | Atty Fees |
|---|---|---|---|---|---|---|---|
| Alaska | X | X | X | | | X | X |
| Arkansas | X | X | X | | X | X | X |
| CA | X | X | X | X | X | X | X |
| Colorado | X | | | X [1] | X | | X |
| Conn. | X | X | X | | | X | X |
| DC | X | | | X | X | | X |
| Florida | X | X | X | X | X | X | X |
| Idaho | X | X | X | | X | X | X |
| Illinois | X | X | X | X | X | X | X |
| Iowa | X | | X | | X | X | X |
| Kentucky | X | X | X | | X | X | X |
| Louisiana | X | X | | X | X | X | X |
| Maine | X | X | X | X | X | X | X |
| Michigan | X | X | X | X | X | X | X |
| Minnesota | X | | | X | X | X | X |
| Missouri | X | X | X | | X | X | X |
| NM | X | X | X | X | X | X | X |
| New York | X | X | X | X | X | X | X |
| NC | X | X | X | X | X | X | X |
| Ohio | X | X | X | | X | X | X |
| Oklahoma | X | X | X | | X | | X |
| Oregon | | | | | | | |
| SC | X | X | X | | X | X | X |
| SD | X | X | X | X | X | X | X |
| Tennessee | | | | | | | |
| Texas | X | | X | | | X | X |
| Utah | X | X | X | | X | X | X |
| Vermont | X | X | X | | X | X | X |
| Wash | X | X | X | X [2] | X | X | X |
| WV | X | X | X | X | X | X | X |
| Wisconsin | X | X | X | X | X | X | X |

1. Colorado's claim for damages for indirect purchasers is limited to state governmental entity purchasers.
2. Washington's claim for damages for indirect purchasers is limited to state governmental entity purchasers.