Jeffrey A. BERGHAUSEN,
Appellant–Plaintiff,

v.

MICROSOFT CORPORATION,
Appellee–Defendant.

No. 10A01–0106–CV–230.

Court of Appeals of Indiana.

March 13, 2002.

Darrell M. Auxier, Jenner & Auxier Law Offices, Madison, IN, Stanley M. Chesley, Robert Heuck II, Waite Schneider Bayless & Chesley Co., LPA, W.B. Markovits, Markovits & Greiwe Co., LPA, Cincinnati, OH, for Appellant.

William C. Barnard, Gayle A. Reindl, Sommer & Barnard, P.C., Indianapolis, IN, for Appellee.

## OPINION

MATTINGLY MAY, Judge.

Jeffrey Berghausen appeals the dismissal of his amended class action complaint against Microsoft Corporation. He raises four issues on appeal, which we consolidate and restate as:

1. Whether Berghausen, as an indirect purchaser, had standing to bring his antitrust claim against Microsoft;

2. Whether Berghausen's allegation of degradation of his computer's performance states a claim of an "antitrust injury"; and

3. Whether Berghausen stated a claim of unjust enrichment or violation of the Indiana Deceptive Consumer Sales Act.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Berghausen sued Microsoft, alleging he purchased a computer from the Micro

Center computer store, which computer contained an inoperable copy of Windows 98 software provided by Microsoft. The complaint alleged Microsoft distributes Windows through computer manufacturers who are licensed by Microsoft to load copies of the operating system onto the computers they manufacture. After Berghausen bought the computer, he entered into an end-user licensing agreement that allowed him to use Windows on his computer. He alleged Microsoft monopolized the market for computer operating systems and as a result he paid a monopoly price for his copy of Windows. Berghausen also alleged Microsoft unlawfully bundled its internet browser with Windows, which bundling caused his computer to run more slowly.

Berghausen sought restitution and damages from Microsoft for its alleged monopolization in violation of Ind.Code § 24–1–2–2 ("the Indiana Act") and Ind.Code § 24–5–0.5–1 ("the Deceptive Sales Act"). Microsoft moved to dismiss for failure to state a claim on which relief could be granted, and the trial court granted the motion.

### DISCUSSION AND DECISION[1]

#### Standard of Review

A Rule 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. When reviewing a 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party and we draw every reasonable inference in favor of that party. We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts that, even if true, would not support the relief requested in that complaint. Further, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or

basis found in the record. *Right Reason Publications v. Silva,* 691 N.E.2d 1347, 1349 (Ind.Ct.App.1998).

1. *Application of the Indiana Act to Indirect Purchasers*

■ Berghausen did not allege in his complaint that he purchased the Windows software directly from Microsoft. Rather, he alleged the software was installed on a computer he purchased and that before he could operate the computer he was required to enter into a licensing agreement with Microsoft. Because Berghausen was not a direct purchaser of the Microsoft product, we find he lacks standing to sue for damages under the Indiana Act and his complaint was therefore properly dismissed.

The Indiana Act was modeled after section two of the Sherman Antitrust Act, 15 U.S.C. 2, ("the Federal Act") and has been interpreted consistent with the federal law interpreting the Federal Act. *Rumple v. Bloomington Hosp.,* 422 N.E.2d 1309, 1315 n. 1 (Ind.Ct.App.1981). The federal decisions addressing the question whether the Federal Act permits an action by an indirect purchaser of a product consistently hold that it does not. While Berghausen correctly notes there are no Indiana decisions that explicitly hold an indirect purchaser may not bring such an action, we believe the reasoning supporting the federal decisions is sound and we adopt it in interpreting the Indiana Act.

A person who monopolizes any part of the trade or commerce within this state commits a Class A misdemeanor. Ind. Code § 24–1–2–2. The Indiana Act goes on to provide a private right of action for such violations:

> Any person who shall be injured in his business or property by any person or

---

**1.** Microsoft requested oral argument. We deny the request.

corporation by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this chapter may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them, reside or are found without respect to the amount in controversy, and shall recover a penalty of threefold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee.

Ind.Code § 24-1-2-7.[2]

The United States Supreme Court has concluded that "the legislative purpose in creating a group of 'private attorneys general' to enforce the antitrust laws under § 4 is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it." *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 748, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (citation omitted).

In that case, a number of government entities that had purchased buildings from general contractors sued concrete block manufacturers, alleging the manufacturers had illegally fixed prices for their product. The manufacturers had sold their concrete blocks to masonry contractors, who performed masonry work on the buildings and charged the general contractors, who in turn sold the buildings to the government. So, "[t]he only way in which the antitrust violation alleged could have injured re-

spondents is if all or part of the overcharge was passed on by the masonry and general contractors to respondents, rather than being absorbed at the first two levels of distribution." *Id.* at 727, 97 S.Ct. 2061. The Court determined the plaintiffs, as indirect purchasers of the block, could not recover damages because they were not injured in their business or property as contemplated by the Act. *Id.* at 729, 97 S.Ct. 2061.

The Court acknowledged that its rule "elevating direct purchasers to a preferred position as private attorneys general" denies recovery to those indirect purchasers who may have been actually injured by antitrust violations. *Id.* at 746, 97 S.Ct. 2061. Still, it held

[W]e are unwilling to carry the compensation principle to its logical extreme by attempting to allocate damages among all those within the defendant's chain of distribution because we question the extent to which such an attempt would make individual victims whole for actual injuries suffered rather than simply depleting the overall recovery in litigation over pass-on issues. Many of the indirect purchasers barred from asserting pass-on claims under the *Hanover Shoe* rule have such a small stake in the lawsuit that even if they were to recover as part of a class, only a small fraction would be likely to come forward to collect their damages. And given the difficulty of ascertaining the amount absorbed by any particular indirect purchaser, there is little basis for believing

**2.** The corresponding provision of the Federal Act, 15 U.S.C. § 15, provides in pertinent part:

any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United

States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

that the amount of the recovery would reflect the actual injury suffered.

*Id.* at 746–47, 97 S.Ct. 2061 (footnote and internal quotation omitted).[3]

Berghausen correctly notes, citing *California v. ARC America Corp.*, 490 U.S. 93, 98 n. 3, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), that some states "have allowed recovery for antitrust injury, regardless of whether it was incurred 'directly or indirectly.'" The *ARC America* Court indi-

cated that some fifteen states had enacted statutes that expressly allow indirect purchasers to sue for antitrust injury. Indiana has not enacted such a statute.

■ Because we hold the Indiana Act does not provide a cause of action to indirect purchasers who allege they were harmed by an antitrust injury, we cannot say the trial court erred to the extent it dismissed Berghausen's claim on that ground.[4]

---

**3.** Berghausen also asserts his action is not precluded by the *Illinois Brick* rule because two exceptions to *Illinois Brick* apply. We disagree.

Berghausen first asserts "[t]he Supreme Court said in *Illinois Brick* that indirect purchasers would be allowed to sue under federal law in situations where the amount of the unlawful overcharge was determined 'without reference to the interaction of supply and demand.'" (Appellant's Br. at 18, *quoting Illinois Brick*, 431 U.S. at 736.) *Illinois Brick* articulated no such broad exception, and we admonish Berghausen's counsel to more accurately characterize the precedent on which he relies. Instead, it noted that the prior case law had cited,

> as the only example of a situation where the defense might be permitted, a pre-existing cost-plus contract. In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case.

*Id.* Berghausen's complaint alleges no such "pre-existing cost-plus contract" and that exception to *Illinois Brick* therefore does not serve as a basis for reversal.

Berghausen next asserts the "control exception" (Appellant's Br. at 19) to *Illinois Brick* might apply. He does not favor us with an explanation of what the "control exception" is, but argues "OEMs and others may be demonstrated to be, functionally, Microsoft's agents in supplying licenses for Microsoft's operating systems." *Id.*

The *Illinois Brick* Court noted that "[a]nother situation in which market forces have

been superseded and the pass-on defense might be permitted is where the direct purchaser is owned or controlled by its customer." 431 U.S. 720, 736 n. 16, 97 S.Ct. 2061, 52 L.Ed.2d 707. The "control exception" applies when a defendant actually owns or exercises direct control over the direct purchaser through "interlocking directorates, minority stock ownership, loan agreements that subject the wholesalers to the manufacturers' operating control, trust agreements, or other modes of control separate from ownership of a majority of the wholesalers' common stock." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605–06 (7th Cir.1997). Berghausen does not allege that Microsoft owned or directly controlled Micro Center, and we accordingly find no error on that ground.

**4.** Berghausen's complaint also asserted a common law claim for restitution. A claim for restitution on behalf of indirect purchasers in an antitrust case implicates the same issues of multiple liability and duplicative recovery that were of concern in *Illinois Brick*, see *Federal Trade Comm'n v. Mylan Labs. Inc.*, 62 F.Supp.2d 25, 43 (D.D.C.1999), *on reconsideration* 99 F.Supp.2d 1 (D.D.C.1999). The *Illinois Brick* decision was also premised in part on "the difficulty of ascertaining the amount absorbed by any particular indirect purchaser"; given that difficulty, "there is little basis for believing that the amount of the recovery would reflect the actual injury suffered." 431 U.S. at 747, 97 S.Ct. 2061. To prevail on a restitution claim, a plaintiff must show that a measurable benefit has been conferred on the defendant. *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.1991). Dismissal of Berghausen's restitution claim on this basis was not error.

a. *The License Agreement*

Even if the Indiana Act does not allow an indirect purchaser to bring an action for antitrust injury, Berghausen asserts, he has standing to bring such an action as a direct licensee of Microsoft. This "direct contractual relationship with Microsoft" (Appellant's Br. at 11), he asserts, gives him standing even absent any allegation that he paid Microsoft directly for the license to use Windows.

We disagree, and believe the *Illinois Brick* reasoning does not support standing on the part of a licensee who is not a direct purchaser:

> [W]e are unwilling to ... attempt[ ] to allocate damages among all those within the defendant's chain of distribution because we question the extent to which such an attempt would make individual victims whole for actual injuries suffered rather than simply depleting the overall recovery in litigation over pass-on issues ... given the difficulty of ascertaining the amount absorbed by any particular indirect purchaser, there is little basis for believing that the amount of the recovery would reflect the actual injury suffered.

431 U.S. at 746–47, 97 S.Ct. 2061. The damage absorbed by a direct licensee in Berghausen's position is no less difficult to ascertain than that suffered by an indirect purchaser; we therefore decline to hold that a direct licensee who did not directly pay the licensor for the use of the software has standing to bring an action for antitrust injury. Whether the consumer buys the software or just the license to use it, "the immediate economic transaction constituting the purchase occurs between the consumer and [computer manufacturer] or retail seller." *In re Microsoft Corp. Anti-*

*trust Litigation,* 127 F.Supp.2d 702, 709 (D.Md.2001). The trial court properly dismissed Berghausen's complaint despite Berghausen's allegation that he was a direct licensee of Microsoft.

2. *The Tying Claims*

■ Berghausen next asserts Microsoft was guilty of illegally "tying" its Internet Explorer browser to its Windows 98 operating system, and that the tying acts directly injured him and the other class members. Therefore, he asserts, *Illinois Brick* does not deprive him of standing. Because Berghausen does not allege "antitrust injury," his complaint was properly dismissed.[5]

■ A "tie" under antitrust law is an arrangement whereby a seller agrees to sell one product only on the condition that the purchaser also buy a second product. *Rumple,* 422 N.E.2d at 1318. In order to prove an illegal tying arrangement, a plaintiff must show that there are two separate and distinct products; that the defendant has sufficient economic power in the market for the tying product to impose significant restrictions in the tied product market; and the amount of commerce affected in the tied product market is not insubstantial. *Id.* In addition, the plaintiff must prove an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations ... would be likely to cause.'" *City of Auburn Through Bd. of Public Works and Safety v. Mavis,* 468

---

5. Because we find Berghausen did not suffer "antitrust injury," we need not address his argument that the Indiana Act did not require him to allege Microsoft's anticompetitive conduct took place "within this state." *See* Ind. Code §§ 24–1–2–2, 24–1–2–1.

N.E.2d 584, 586 (Ind.Ct.App.1984), *quoting Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 125, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

Berghausen appears to be alleging consumers are injured by the tying of Windows 98 and Internet Explorer because they must either "pay the high cost of having Internet Explorer uninstalled" (Appellant's App. at 13) or leave Internet Explorer on the computer causing performance degradation, increased risk of bugs and security breaches, and increased support costs. These allegations do not constitute "antitrust injury."

■ "Only harm stemming from *a reduction in competition* qualifies as an injury cognizable under the anti-trust laws." *Adams v. Pan Am. World Airways, Inc.,* 828 F.2d 24, 26 (D.C.Cir.1987) (emphasis supplied). So, a plaintiff may recover only if the loss stems from "a competition-reducing aspect or effect of the defendant's behavior." *Ford Motor Co. v. Lane,* 86 F.Supp.2d 711, 714 (E.D.Mich.2000). Degradation of computer performance resulting from the tying of Windows 98 and Internet Explorer is "only incidentally related to the alleged anticompetitive behavior," *Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d at 712, and does not demonstrate antitrust injury. *Id.* We cannot say the trial court erred to the extent it dismissed the complaint on that ground.

*3. The Deceptive Sales Act*

■ Berghausen alleged Microsoft's conduct violated the Deceptive Sales Act, Ind.Code § 24–5–0.5–1 to –12, in part because Microsoft "implicitly represented to consumers that its prices were fair and competitive when in fact the prices were supra-competitive, monopolist prices that

far exceeded the prices consumers would have paid if Microsoft had not engaged in the aforesaid conduct." (Appellant's App. at 18). Berghausen specifically alleges violation of two sections of the Act.

He first appears to assert that Microsoft violated Ind.Code § 24–5–0.5–3(a)(6), which defines as a "deceptive act" a representation that a "specific price advantage exists as to such subject of a consumer transaction, if it does not and if the supplier knows or should reasonably know that it does not." Berghausen does not state a claim under that section; it applies, by its own terms, only to representations "made either orally or in writing by a supplier." *Id.* § 24–5–0.5–3(a).[6] Berghausen alleges no such oral or written representations, nor does he offer argument explaining why Microsoft's "implicit representations" would fit within the definition of deceptive acts. His complaint was therefore properly dismissed.

Next, Berghausen asserts a violation of Ind.Code § 24–5–0.5–10(b), which provides that

A supplier commits an unconscionable act that shall be treated the same as a deceptive act under this chapter *if the supplier solicits a person to enter into a contract or agreement:*

(1) that contains terms that are oppressively one sided or harsh;

(2) in which the terms unduly limit the person's remedies; or

(3) in which the price is unduly excessive;

and there was unequal bargaining power that led the person to enter into the contract or agreement unwillingly or without knowledge of the terms of the

---

**6.** While Berghausen's counsel quotes the statutory language of § (a)(6), he does not acknowledge the explicit statutory requirement

of a written or oral representation. We again admonish counsel to fairly and accurately represent the authority on which he relies.

contract or agreement. There is a rebuttable presumption that a person has knowledge of the terms of a contract or agreement if the person signs a written contract.

(Emphasis supplied).

Berghausen offers no argument supporting his assertion that his allegations regarding this section "fall squarely within the boundaries of the Deceptive Consumer Sales Act," and we are therefore unable to address it on appeal. *See Young v. Butts,* 685 N.E.2d 147, 150 (Ind.Ct.App.1997). Notwithstanding Berghausen's waiver of this allegation of error, we note that his complaint does not appear to allege the type of solicitation to enter into a contract or agreement that the statute explicitly requires.

### CONCLUSION

Berghausen lacked standing to bring the antitrust claim against Microsoft because he was an indirect purchaser of the Microsoft product and because he suffered no "antitrust injury." Nor did he state a claim under the Indiana Deceptive Consumer Sales Act. The trial court properly dismissed his complaint, and we affirm.

SULLIVAN, J., and BARNES, J., concur.