Joseph R. FRANTZ and Frantz Lumber
Co., Inc., Appellants–Defendants,

v.

Bill CANTRELL, Appellee–Plaintiff.

No. 85A02–9810–CV–848.

Court of Appeals of Indiana.

April 30, 1999.

Elden E. Stoops, Jr., North Manchester, Indiana, Attorney for Appellants.

Joseph W. Eddingfield, Wabash, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

Defendant-appellants Joseph R. Frantz and Frantz Lumber Co., Inc. (collectively "Frantz") appeal from the judgment in favor of plaintiff-appellee Bill Cantrell ("Cantrell") on his breach of implied warranty action.

Frantz presents three issues for our review which we restate as follows:

I. Whether Frantz's sale of shingles to Cantrell gave rise to an implied warranty of merchantability.

II. If the sale did give rise to an implied warranty of merchantability, whether the evidence was sufficient to support the trial court's finding that Frantz breached such warranty.

III. If Frantz did breach such warranty, whether the evidence was sufficient to support the trial court's award of damages to Cantrell.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the trial court's determination reveal that in the summer of 1994, Cantrell entered into a contractual arrangement with Frantz, whereby Frantz agreed to install a new shingled roof on Cantrell's residence. At that time, Cantrell's only specification was that the shingles be of a good quality asphalt, as opposed to fiberglass shingles. The representative of Frantz obliged by selecting a particular brand of three-tabbed asphalt shingles which the lumber company routinely dealt with and which carried a twenty-year warranty from the manufacturer. The agreed upon price for the shingles and the installation of the new roof was $1,985.15.

Frantz completed the roof later that summer. Cantrell was initially satisfied with the work and with the shingles which had no apparent defects and paid Frantz for the work. However, in the winter months following the installation, Cantrell noticed that some of the shingles were curling up at the edges and that the tabs of many of the shingles had failed to seal down properly. This caused Cantrell concern not only for the integrity of the roof, but its appearance as well.

Cantrell notified Frantz of the problem and a representative of Frantz came to Cantrell's home to inspect the shingles. Upon examining the roof, the representative noted that while the workmanship was competent, there was a problem with the shingles which he had never encountered before. The representative indicated he would contact the manufacturer of the shingles in an effort to determine an appropriate course of action.

In the months following Cantrell's initial inquiries, Frantz mailed a document to Cantrell which detailed a phenomenon known as "cold curl," a peculiarity to the type of asphalt shingles which had been used on Cantrell's roof. The document advised that this occurrence should correct itself when the roof warms up either by sunlight or an increase in the ambient temperature, but did not address the failure of a number of the shingles' tabs to seal down.

In light of this information, Cantrell waited until the summer of 1995 to see if the warmer weather would in fact remedy the problem. However, when the cold curl and defective sealing did not rectify itself with the increase in temperature, Cantrell again contacted Frantz in an attempt to resolve these issues. When that attempt failed, Cantrell filed his Complaint For Damages against Frantz, claiming breach of implied warranty for the sale of the defective shingles. Following a bench trial, the court entered its order of judgment against Frantz in the amount of $3,904.97, the cost of repair or replacement less the value and use of the installed roof. Frantz now appeals.

## DISCUSSION AND DECISION

### I. Implied Warranty of Merchantability

Frantz contends that absent evidence of a special relationship between Frantz and the manufacturer of the shingles, there can be no basis for a breach of implied warranty suit against Frantz. We cannot agree.

Under the Uniform Commercial Code as enacted in Indiana, IC 26–1–1–101 to –10–104, there are two implied warranties, that of merchantability and that of fitness for a particular purpose. *Richards v. Goerg Boat and Motors, Inc.*, 179 Ind.App. 102, 384 N.E.2d 1084, 1090 (1979), *trans. denied.* Because the implied warranty of merchantability is the only type implicated under the facts

in the present case, we limit our review to that warranty only.[1]

Unless excluded or modified, a warranty that goods shall be merchantable is implied in *all* sales contracts if the seller is a merchant with respect to goods of that kind. IC 26–1–2–314(1). The warranty of merchantability arises out of the relationship between the buyer and the seller who is a merchant. *Richards*, 384 N.E.2d at 1091. An implied warranty of merchantability is imposed by operation of law for the protection of the buyer and must be liberally construed in favor of the buyer. *Jones v. Abriani*, 169 Ind.App. 556, 571, 350 N.E.2d 635, 645 (1976) (citing *Woodruff v. Clark County Farm Bureau Coop. Ass'n*, 153 Ind.App. 31, 286 N.E.2d 188 (1972)). To exclude this warranty, one must exercise special care. *Travel Craft, Inc. v. Wilhelm Mende GmbH & Co.*, 552 N.E.2d 443, 444 (Ind.1990). There is no requirement that any specific relationship between the seller and the manufacturer exist for the warranty to be implied.

Frantz next argues that it is not a "merchant" within the meaning of IC 26–1–2–314. A seller who makes casual or occasional sales of goods of a particular kind is not a merchant in those goods. *Sebasty v. Perschke*, 404 N.E.2d 1200, 1203 (Ind.Ct.App. 1980), *trans. denied.* Because a person making an isolated sale of goods is not a "merchant" within the scope of the Indiana UCC provision, no warranty of merchantability applies. IC 26–1–2–314 (UCC comment 3).

IC 26–1–2–104(1) defines "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." Applying this definition here, we note that the Frantz family has been affiliated with the lumber company since 1910, and during those eighty-nine years it has sold more than just lumber. Indeed, its business accounting statements bear the phrase "ALL KINDS OF BUILDING MATERIAL" directly beneath the company logo. *Record* at 34. By Cantrell's own testimony, Frantz was the only establishment he approached to install the new roof on his house, because he had heard of the company's local reputation to do good construction and roofing work. Cantrell also testified that upon specifying he wanted asphalt shingles for his new roof, the representative from Frantz promptly advised that the lumber company did deal with an asphalt shingle which carried a twenty-year warranty. Moreover, the Record as a whole demonstrates Frantz to be extremely knowledgeable about the construction and installation of new roofs, and in turn, the shingles which are used during the course of such work, and supports the trial court's finding that Frantz was a merchant.

Frantz next invokes IC 26–1–2–316(3)(c) for the argument that it is excused from liability under the implied warranty of merchantability because of certain usages of trade prevalent in the roofing business. This statute provides in pertinent part that an implied warranty may be excluded or modified by usage of trade. IC 26–1–2–316(3)(c). A usage of trade is "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." IC 26–1–1–205(2). In support of its position, Frantz notes that Cantrell's own expert witness testified that a roofer traditionally does not provide any warranties as to the shingles themselves, and as such, argues that the implied warranty of merchantability is inapplicable in the instant case.

---

1. The two implied warranties are neither synonymous nor interchangeable. While it is quite possible for both warranties to exist in a particular transaction, there is a clear distinction between the two. *Jameson Chemical Co., Ltd. v. Love*, 401 N.E.2d 41, 45 (Ind.Ct.App.1980), *modified on other grounds*, 403 N.E.2d 928 (Ind.Ct.App.1980). The implied warranty of merchantability deals inter alia with the fitness of goods for the ordinary, customary purposes for which such goods are used. *Id.* at 46 (citing IC 26–1–2–314(2)(c)). On the other hand, the implied warranty of fitness for a particular purpose applies to goods purchased by the buyer with a specific use in mind which is peculiar to the nature of his business or his particular needs. IC 26–1–2–315 (UCC comment 2). Here, the shingles were used in the ordinary and customary way.

In *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078 (Ind.1993), our supreme court held that in order for the exception to be applicable, the usage of trade must be used in the vocation or trade in which *both* the contracting parties are engaged or be one of which *both* parties are or should be aware. *Id.* at 1084; IC 26–1–1–205(3). Here, the parties in the present case are not in the same trade and there is no evidence that Cantrell was or should have been aware of the asserted usage of trade.

## II. Breach of Implied Warranty of Merchantability

Because we find that the trial court did not err in its determination that an implied warranty of merchantability arose out of Frantz's sale of the asphalt shingles to Cantrell, the question becomes whether the evidence is sufficient to support the trial court's finding of a breach of that warranty. "Any action based on breach of warranty requires evidence showing not only the existence of the warranty but that the warranty was broken and that the breach of warranty was the proximate cause of the loss sustained." *Richards*, 384 N.E.2d at 1090. Frantz contends that the Record in this case does not contain any evidence to sustain a judgment against it for breach of implied warranty of merchantability. Again, we cannot agree.

When the sufficiency of the evidence is questioned on appeal, we will not reweigh the evidence but will consider only that evidence most favorable to the appellee together with the reasonable inferences to be drawn therefrom. *Jones*, 169 Ind.App. at 564, 350 N.E.2d at 642 (citing *Muehlman v. Keilman*, 257 Ind. 100, 272 N.E.2d 591 (1971)). Moreover, when the trial is before the court as it was in the instant case, we must accept the ultimate facts as found by the trial court if there is sufficient evidence to support such facts, and may not reverse the judgment unless it is clearly erroneous. *Jones*, 169 Ind.App. at 565, 350 N.E.2d at 642 (citing *Grissom v. Moran*, 154 Ind.App. 419, 290 N.E.2d 119 (1972)).

Here, the court determined that "[t]he shingles were defective in that they would not seal properly causing curling of the edges. This curling of the edges resulted in a very unsightly roof with a great potential for failure at an early age." *Record* at 5. In opposition to the court's findings, Frantz contends that the sole purpose of shingles is to roof a house thereby securing the structure from the elements, and that because none of the shingles ever blew off or the roof had never leaked, there was no breach.

In *Travel Craft*, 552 N.E.2d at 446 (citing Black's Law Dictionary 376 (5th ed.1979)), our supreme court stated that a good may be defective as the result of some sort of imperfection or dereliction. The trial court's finding that the shingles in this case were defective is more than adequately supported by the evidence of their imperfections, namely, the curling and failure to seal. Shingles which fail to seal and which curl in an unsightly manner even in warm weather cannot be said to "conform to ordinary standards and . . . be of the same average grade, quality, and value as similar goods sold under similar circumstances." *Jones*, 169 Ind.App. at 571, 350 N.E.2d at 645 (citing *Woodruff*, 153 Ind.App. at 42, 286 N.E.2d at 194). In addition, a roof which is not flat and smooth and whose shingles curl up at the edges and fail to seal cannot be said to "pass without objection in the trade," IC 26–1–2–314(2)(a), even if it does shield the structure from the elements. As such, the trial court's determination that Frantz breached the implied warranty of merchantability in its sale of shingles to Cantrell is supported by the Record and was not clearly erroneous.

## III. Damages

Finally, Frantz argues that the evidence is insufficient to support the trial court's award of damages in the amount of $3,904.97. We disagree. IC 26–1–2–714(1) states that a buyer may recover compensatory damages resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable. IC 26–1–2–715 further provides for the recovery of incidental and consequential damages which are reasonably foreseeable.

The evidence adduced at trial revealed that the condition of Cantrell's roof as

a result of the defective shingles sold by Frantz had detracted from the value of Cantrell's entire property, in that the shingles were unsightly and gave the roof the appearance of being fifteen to twenty years old when in fact it was only four years old at the time of trial. Cantrell's witnesses testified that complete elimination of the curling shingles which had failed to seal was the only remedy available to cure this problem. Moreover, the entire roof required replacement. The roof would have to be stripped of two layers of shingles and completely redone, a reasonably foreseeable consequence of the installation of the faulty shingles in question.

Based on this testimony, Cantrell submitted an estimate for the replacement of the roof at $4,897.55, a usual and customary bid amount for this type of work in his particular locale. There was no evidence offered by Frantz to the contrary. Thereafter, the court determined that Frantz should be credited for the value and use of the installed roof which Cantrell had received up to the time of trial, which was calculated at 50% of the original purchase price of the new roof, or $992.58.

As such, the court's judgment against Frantz for its breach of implied warranty of merchantability in the amount of $3,904.97 was reasonable and comports with UCC guidelines. The evidence in the Record is more than sufficient to support such an award and the trial court's determination was not clearly erroneous.

We affirm.

GARRARD, J., and NAJAM, J., concur.