Brad LAWSON, Appellant–Plaintiff,

v.

Rodney HALE d/b/a R.H. Equipment, Appellee–Defendant.

No. 77A04–0807–CV–402.

Court of Appeals of Indiana.

Feb. 26, 2009.

Joleen V. Klotz, James O. McDonald, Everett, Everett & McDonald, Terre Haute, IN, Attorneys for Appellant.

Douglas S. Followell, Sullivan, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Brad Lawson (Lawson), appeals the trial court's judgment in favor of Appellee–Plaintiff, Rodney Hale d/b/a R.H. Equipment (Hale), on Lawson's Complaint arising from the sale of a tractor.

We affirm in part, reverse in part, and remand with instructions.[1]

### ISSUES

Lawson presents four issues for our review, which we consolidate and restate as the following three issues:

(1) Whether the trial court erred in ruling that Hale had not violated the Indiana Deceptive Consumer Sales Act, Ind.Code §§ 24–5–0.5–1 to 24–5–0.5–12;

(2) Whether the trial court erred in ruling that Hale effectively disclaimed the implied warranty of merchantability; and

(3) Whether the trial court erred in ruling that Lawson had failed to establish the elements of common law fraud.

### FACTS AND PROCEDURAL HISTORY

One day in July of 2006, Lawson, who was looking to buy a Ford tractor, saw

---

1. We note that Lawson's appellate attorneys have reproduced the entire transcript and the entire exhibit volume in their appellate appendix. Suffice it to say, we do not need two identical copies of the record in order to perform our review. As such, the provision of two copies is a waste of paper that merely bloats the record on appeal. We refer counsel to Indiana Appellate Rule 50, which describes the proper contents of an appendix, including, among other things, only those portions of the transcript and exhibits that are relevant to the issues on appeal.

several tractors on the lot of R.H. Equipment in Carlisle, Indiana. He stopped to look at a 1989 Ford 2120 tractor on the lot, and he called the number on the R.H. Equipment sign to inquire about the tractor. Over time, Lawson made several inquiries about the history of the tractor, and Hale told him that it leaked oil and fuel.

On July 19, 2006, Hale met with Lawson and Lawson's grandson to discuss the tractor. Lawson asked Hale whether he knew anything about the tractor, and Hale said that he had not had it in his shop and that he did not really know anything about it, other than the oil and fuel leaks. After test driving the tractor for a few blocks, Lawson decided that he wanted to purchase it. He gave Hale $500 of the $8500 purchase price that day.

On July 24, 2006, Lawson and his grandson returned to R.H. Equipment to pay the balance and to pick up the tractor. Lawson again asked Hale if he knew whether there was anything wrong with the tractor, Hale again told him that it leaked oil and fuel. After Lawson gave Hale an $8000 check to cover the balance, Hale presented Lawson with an R.H. Equipment invoice that included the words "AS IS." (Appellant's App. p. 11). Lawson signed the invoice.

Lawson and his grandson then immediately drove the tractor to Pigg Implement in Sullivan, Indiana. When they arrived at Pigg Implement, Lawson noticed that there was "oil running out underneath the engine, onto the gravel." (Tr. p. 13). Greg Knoblett (Knoblett), Pigg Implement's service manager, came out and inspected the tractor. He observed that the tractor's engine was cracked and had been welded. Lawson left the tractor at Pigg Implement so that a closer inspection could be made.

Two weeks after Lawson had purchased the tractor, another Pigg Implement employee told Lawson that a man had been into the shop and had mentioned that "he'd bought a similar tractor and returned it." (Tr. p. 18). The employee gave Lawson the man's name, Thomas Pearce (Pearce), and Lawson called Pearce. Pearce told Lawson that he had purchased a 2120 Ford tractor from R.H. Equipment in Carlisle. As it turned out, Pearce had purchased the exact same tractor from R.H. Equipment on May 29, 2006. After Pearce discovered the cracked engine block, Hale told Pearce that he would get it fixed. The crack was eventually welded, but Hale contacted Pearce and told him that he was not sure that the welding job would satisfy Pearce. That was the end of Pearce's involvement with the tractor.

After learning this back story, Lawson contacted an attorney who, on August 24, 2006, sent a letter to Hale giving him an opportunity to cure the defect in the tractor, pursuant to the Indiana Deceptive Consumer Sales Act, I.C. §§ 24–5–0.5–1 to 24–5–0.5–12 (IDCSA or the Act). On September 15, 2006, Hale's attorney sent a letter to Lawson's attorney explaining that the tractor was sold "as is" and refusing to cure the alleged defect. In the end, Lawson paid approximately $4300 to have the engine repaired, though Pigg Implement would not guarantee the repairs because of the difficulty of welding cast iron.

On October 18, 2006, Lawson filed a Complaint against Hale. In Count I, Lawson claimed that Hale had violated the Indiana Deceptive Consumer Sales Act, I.C. §§ 24–5–0.5–1 through 24–5–0.5–12. In Count II, Lawson alleged that Hale had violated the implied warranty of merchantability. In Count III, Lawson asserted that Hale had breached an express warranty. In Count IV, Lawson claimed that Hale had committed fraud.

A bench trial was held on May 7, 2008. Hale testified that the majority of R.H. Equipment's sales consist of "lawn mowers, new and used." (Tr. p. 66). However, he also said that R.H. Equipment sells "used equipment," and when he was asked whether it is true that he is "in the business of selling tractors and lawn equipment at R.H. Equipment," he replied, "Yes." (Tr. pp. 66, 75) (emphasis added). He testified that he had received the 1989 Ford 2120 tractor in exchange for a lawn mower. Finally, Hale testified that he repeatedly told Lawson that the tractor leaked oil and fuel, but he also testified that he never told Lawson about the cracked engine block before Lawson purchased the tractor.

On June 3, 2008, the trial court entered judgment in favor of Hale. Specifically, the trial court ruled:

1. [Hale] is not a supplier as defined by I.C. 24–5–0.5–2(a)(3)(A) in that he does not regularly engage in or solicit consumer transaction[s] involving the sale of tractors. [Hale] testified he sold this tractor that he had received on trade from another individual in payment of a debt. By [Hale's] own testimony, [Hale] admits that he regularly engages in the sale of lawn mowers but only sold this tractor to recoup a debt owed to him by another individual. Thus, the Court finds the sale of the tractor by [Hale] should be construed as a private sale[.]
2. Further, [Lawson] received an INVOICE from [Hale] which distinctly states "AS IS" and "PAID IN FULL". The INVOICE was executed by both [Lawson] and [Hale]. The Court heard no testimony from [Lawson] that this invoice was executed under duress or by mistake. The only testimony offered by [Lawson] was that he had already paid [Hale] for the tractor when he was given the INVOICE. Certainly, [Lawson] could have rescinded the sale or objected to the language contained on the INVOICE but rather chose to complete the transaction.
3. Generally, sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase "as is" relieves the seller from liability to the purchaser for defects in that condition. Expressions such as "as is" or "with all faults" are commonly understood to exclude implied warranties. *Dutchm[e]n Manufacturing, Inc. v. Reynolds*, 849 N.E.2d 516, 523–24 (Ind. 2006).

(Appellant's App. p. 5).

Lawson now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

On appeal, Lawson contends that the trial court erred in entering judgment against him and in favor of Hale on Lawson's claims for violation of the IDCSA, breach of the implied warranty of merchantability, and fraud.[2] Because Lawson, as the plaintiff, had the burden of proving each of these claims, he is appealing from a negative judgment. As such, to prevail, Lawson must demonstrate that the trial court's judgment is contrary to law. *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1031–32 (Ind.2004), *reh'g denied*. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* In conducting our review, we cannot reweigh

---

**2.** Lawson does not appeal the judgment against him on Count III of his Complaint, breach of express warranty.

the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.*

## I. *Indiana Deceptive Consumer Sales Act*

Lawson first argues that the trial court erred by ruling in favor of Hale on Lawson's claim under the IDCSA. This argument requires us to answer two questions: (1) whether Hale is a "supplier" for purposes of the Act; and (2) whether Hale committed a deceptive act for purposes of the Act.

### A. *"Supplier"*

■ The IDCSA is aimed at "suppliers" who commit deceptive and unconscionable consumer sale practices. I.C. § 24–5–0.5–1. The Act is to be "liberally construed and applied to promote its purposes and policies." *Id.* For purposes of the IDCSA, a "supplier" is defined, in part, as "a seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer[.]" I.C. § 24–5–0.5–2(a)(3)(A).[3] Lawson contends that Hale, doing business as R.H. Equipment, falls within this definition.

The trial court concluded, and Hale argues on appeal, that he is not a "supplier" of tractors for purposes of the IDCSA because he does not "regularly engage" in the sale of tractors. Stated differently, while Hale concedes that he "regularly engages" in the sale of lawn mowers and is therefore a "supplier" of lawn mowers, the same cannot be said with regard to tractors.

At first glance, Indiana Code section 24–5–0.5–2(a)(3)(A) appears to provide an incredibly broad definition of "supplier"; it includes any "seller . . . who regularly engages in . . . consumer transactions." Say, for example, that James owns a store where he sells lamps. On his day off, James is at his house, and he sells a bouquet of flowers to Christine, a neighbor, by falsely representing that the flowers will cure cancer. Under the broadest definition of "supplier," James could be sued under the IDCSA because, in his professional life, he regularly engages in consumer transactions, notwithstanding the contrast between flowers and lamps. James would be considered a "supplier" with regard to anything and everything he ever sold, even privately and personally, because, in his job, he regularly sells things. We decline to adopt this broad interpretation.

■ Rather, we conclude that a person is a "supplier" with regard to those consumer transactions which are at least indirectly connected with the ordinary and usual course of the person's business, vocation or occupation. *See Wolverton v. Stanwood,* 278 Or. 341, 563 P.2d 1203, 1205 (1977), *reh'g denied; see also, e.g.,* Or.Rev. Stat. § 646.608 ("A person engages in an unlawful practice *when in the course of the person's business, vocation or occupation* the person does any of the following . . .") (emphasis added); Minn.Stat. § 325D.44(1) ("A person engages in a deceptive trade practice *when, in the course of business, vocation, or occupation,* the person . . .") (emphasis added); 815 Ill. Comp. Stat. 510/2(a) (same); Ga.Code Ann. § 10–1–372(a) (similar). In the above hypothetical, James' sale of the flowers to Christine

---

**3.** This subsection was amended effective January 1, 2007. *See* P.L. 85–2006, § 2. Because the transaction giving rise to this case took place in 2006, we apply the previous version. That being said, the amendment is irrelevant to the issues before us and would not affect the outcome even if applied.

at James' home would have no connection, even indirect, with the ordinary and usual course of James' lamp business. That is, the flower sale would be a strictly private transaction that is totally unconnected with James' business or employment. *See id.* at 1204; *see also A.J.'s Auto. Sales, Inc. v. Freet,* 725 N.E.2d 955, 964 (Ind.Ct.App. 2000) (holding that "a private individual completing a one-time sale of his or her private automobile" is not a "supplier" for purposes of the IDCSA), *reh'g denied, trans. denied.*

In this case, there is evidence that the sale of lawn mowers, not the sale of tractors, is Hale's *primary* business. That being said, there is uncontroverted evidence that the sale of the tractor to Lawson was at least indirectly connected with the ordinary and usual course of Hale's business. There is no dispute that the tractor in question was on the R.H. Equipment sales lot, with the lawn mowers, and that Hale used an R.H. Equipment invoice to memorialize the sale, just as he would have if he had sold a lawn mower. Furthermore, Lawson gave uncontradicted testimony that there were "several tractors" on the R.H. Equipment lot on the day he first saw the Ford tractor in question. (Tr. p. 4). Most tellingly, when Hale was asked at trial whether it is true that he is "in the business of selling *tractors* and lawn equipment at R.H. Equipment," he replied, "Yes." (Tr. p. 75) (emphasis added). In light of this evidence, the trial court erred in treating the transaction as a mere private sale. Instead, the trial court should have concluded that Hale, doing business as R.H. Equipment, is a "supplier" for purposes of the IDCSA.

**4.** This subsection was amended effective January 1, 2007. *See* P.L. 85–2006, § 3. Because the transaction giving rise to this case took place in 2006, we apply the previous

## B. *"Deceptive Act"*

■ Having determined that Hale is a "supplier" for purposes of the IDCSA, we must now determine whether he committed a deceptive act within the meaning of the Act, thereby giving rise to liability. The acts or representations constituting "deceptive acts" under the IDCSA are specifically-enumerated in Indiana Code sections 24–5–0.5–3[4] and 24–5–0.5–10. Lawson's argument focuses on Indiana Code subsection 24–5–0.5–3(a)(2):

(a) The following acts or representations as to the subject matter of a consumer transaction, made either orally or in writing by a supplier, are deceptive acts:

\* \* \* \*

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

Lawson contends that Hale, by stating that the tractor leaks oil and that he otherwise knew little about the tractor, was making a representation that the tractor was "of a particular standard, quality, grade, style, or model." We disagree.

We have previously held that, to be actionable under the above clause, the representation "must be referential; that is, it must compare the goods to an objective and independent standard." *McCormick Piano & Organ Co. v. Geiger,* 412 N.E.2d 842, 848 (Ind.Ct.App.1980). Lawson fails to explain how Hale's disclosure that the tractor leaks oil constitutes a comparison to an objective and independent standard. Nor does Lawson argue that Hale's failure to disclose the cracked engine block

version. That being said, the amendment is irrelevant to the issues before us and would not affect the outcome even if applied.

amounts to a deceptive act under this provision, and rightfully so: Indiana Code section 24–5–0.5–3(a), which requires an oral or written act or representation, does not apply to non-disclosures. *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 598 (Ind.Ct.App.2002), *trans. denied.* Lawson's claim that Hale committed a deceptive act under Indiana Code section 24–5–0.5–3(a)(2) must fail.

But why? Hale is a supplier under the IDCSA, one purpose of the IDCSA is to protect consumers from deceptive sales acts, and Hale arguably perpetrated a deceptive sales act by failing to tell Lawson of the crack in the tractor's engine block. Yet, Hale is not liable under the IDCSA. Our holding is based purely on the language of the IDCSA. That is, we are not saying that Hale's acts were not deceptive (see the fraud discussion in Section III), but only that the categories of deceptive acts giving rise to liability under the IDCSA are very specifically defined. *See* I.C. §§ 24–5–0.5–3, –10. Unfortunately for Lawson, Hale's acts do not fall into any of those categories; there is no general "fraud" category. Compare consumer protection acts in many other states, which either specifically refer to failure to state material facts or include "catch-all" clauses that could reach Hale's actions in this case.[5] The IDCSA contains no such provisions. Our legislature may choose to revisit the Act at some point. For now, however, we are bound by its current language. That being the case, we affirm the trial court's judgment in favor of Hale on Lawson's claim under the IDCSA.

## II. *Implied Warranty of Merchantability*

◼ Next, Lawson contends that the trial court's conclusion that Hale effectively disclaimed the implied warranty of merchantability was contrary to our opinion in *Hahn v. Ford Motor Co.*, 434 N.E.2d 943 (Ind.Ct.App.1982). Generally stated, the implied warranty of merchantability concerns the fitness of goods for the ordinary, customary purposes for which such goods are used. *See* I.C. § 26–1–2–314; *see also Frantz v. Cantrell*, 711 N.E.2d 856, 859 n. 1 (Ind.Ct.App.1999). The seller can disclaim this warranty by using the words "as is." I.C. § 26–1–2–316(3)(a). Here, the invoice memorializing the transaction be-

---

5. *See, e.g.*, Alaska Stat. § 45.50.471(b)(11) ("engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services"), (b)(12) ("using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged"); 73 Pa. Cons.Stat. Ann. § 201–2(4)(xxi) ("Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."); Tenn.Code Ann. § 47–18–104(b)(27) ("Engaging in any other conduct or practice which is deceptive to the consumer or to any other person[.]"); Minn. Stat. § 325D.44(1)(13) ("engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding"); 815 Ill. Comp. Stat. 510/2(a)(12) (same); Ga. Code Ann. § 10–1–372(a)(12) (same); Or. Rev.Stat. § 648.608(1)(u) ("Engages in any other unfair or deceptive conduct in trade or commerce."); Md.Code Ann., Com. Law § 13–301(3) ("Unfair or deceptive trade practices include any ... [f]ailure to state a material fact if the failure deceives or tends to deceive[.]"); Tex. Bus. & Com.Code Ann. § 17.46(b)(24) ("false, misleading, or deceptive acts or practices" includes "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed").

tween Hale and Lawson includes the handwritten words "AS IS." (Appellant's App. p. 11). As such, the trial court held that any implied warranties had been excluded.

On appeal, Lawson argues that the "AS IS" disclaimer is ineffective because Hale did not give him the invoice until after Lawson had paid for the tractor. He relies on our opinion in *Hahn,* where we noted, "[I]n instances where seller does not attempt a modification of warranty or limitation of remedy until after the contract for sale has been made even properly worded limitations or exclusions are ineffective." *Hahn,* 434 N.E.2d at 948. Here, however, the evidence is undisputed that Lawson signed the invoice and gave it back to Hale knowing that it said "AS IS." This evidence supports the trial court's finding that Lawson "could have rescinded the sale or objected to the language contained on the INVOICE but rather chose to complete the transaction." (Appellant's App. p. 5). In other words, there is evidence tending to show that the contract for sale was not yet finalized when Hale presented Lawson with the disclaimer and that Lawson signed the invoice without objection. Furthermore, as the trial court noted, Lawson does not claim that he signed the invoice under duress or by mistake. For these reasons, we affirm the trial court's judgment in favor of Hale on Lawson's claim for breach of the implied warranty of merchantability.

### III. *Fraud*

■ Finally, Lawson challenges the trial court's judgment in favor of Hale on Lawson's claim for fraud. To establish fraud, the plaintiff must prove that there was a material misrepresentation of past or existing facts made with knowledge or reckless ignorance of its falsity and that the misrepresentation caused reliance to the detriment of the person relying on it. *Fimbel v. DeClark,* 695 N.E.2d 125, 127

(Ind.Ct.App.1998), *trans. denied.* But fraud is not limited only to affirmative representations; the failure to disclose all material facts can also constitute actionable fraud. *Id.* When a buyer makes inquiries about the condition, qualities, or characteristics of property "it becomes incumbent upon the seller to fully declare any and all problems associated with the subject of the inquiry." *Id.*

Here, despite several inquiries by Lawson about any problems with the tractor, Hale failed to disclose the cracked engine block. He simply told Lawson that the tractor leaks oil and fuel. But vehicles can leak oil and fuel for many reasons that are not as serious as a crack in the engine block. No reasonable person would say that a cracked engine block in not a material fact.

Still, Hale testified at trial that, as far as he was concerned, the tractor had been "fixed" and was "ready for sale." (Tr. p. 79). The inference that Hale would have us make is that he reasonably believed that it was unnecessary to disclose the cracked engine block because the crack had been repaired. Fatal to that claim, though, is Pearce's uncontradicted testimony that Hale told him that he would not be satisfied with the attempted repair. If Hale believed that the tractor was "fixed," then why would he have told Pearce that Pearce would not be satisfied with the welding job? Given Pearce's testimony, Hale's statement on appeal that "there was no evidence or testimony, or otherwise, that Mr. Hale knew the used tractor was inoperable *or otherwise defective* " is simply untrue. (Appellee's Br. p. 7) (emphasis added). To the contrary, we conclude that the evidence with regard to Lawson's fraud claim, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *See Quandt,*

810 N.E.2d at 1032. In fact, this strikes us as a textbook case of fraud. Therefore, we reverse the trial court's judgment in favor of Hale and remand this cause with instructions to enter judgment in favor of Lawson and to determine Lawson's damages arising from the fraud.

*CONCLUSION*

Based on the foregoing, we conclude that the trial court did not err in entering judgment in favor of Hale on Lawson's claims for violation of the IDCSA and for breach of the implied warranty of merchantability. However, the trial court did err by entering judgment in favor of Hale on Lawson's claim for fraud. Therefore, as to that claim only, we reverse the trial court's judgment and remand this cause with instructions to enter judgment in favor of Lawson and to determine Lawson's damages.

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and VAIDIK, J., concur.