# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ROBERT E. DUFF**
Indiana Consumer Law Group/
The Law Office of Robert E. Duff
Lebanon, Indiana

ATTORNEY FOR APPELLEE:

**JULIANNE NIXON SHEEKS**
The Sheeks Law Firm, LLC
Greenfield, Indiana

FILED

Sep 04 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| HEATHER N. KESLING, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | )   No. 49A02-1111-CT-1031 |
| | ) |
| HUBLER NISSAN, INC., | ) |
| | ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
Cause No. 49D12-0901-CT-2954

**September 4, 2012**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Heather Kesling appeals the trial court's order granting summary judgment to Hubler Nissan, Inc., on her Indiana Deceptive Consumer Sales Act, Indiana Crime Victims Relief Act, and fraud claims. We reverse and remand.

## ISSUE

Kesling presents one issue for our review: whether the trial court erred by granting summary judgment to Hubler on these claims.

## FACTS AND PROCEDURAL HISTORY[1]

The facts most favorable to Kesling are as follows. On October 20, 2007, Hubler inspected a 1996 Mitsubishi Eclipse and accepted it as a trade-in. The dealership then advertised the Eclipse on the internet at www.autotrader.com. The advertisement contained pictures of the vehicle, described it as a "Sporty Car at a Great Value Price," Appellant's App. p. 225, listed its features, and asked for a purchase price of $2981.

Kesling saw the advertisement and went to the dealership with her boyfriend on November 3, 2007, just fourteen days after the trade-in. Kesling test drove the Eclipse and noticed that it did not seem to be idling correctly. When she asked Hubler's salesperson if there was anything wrong with the vehicle, he responded that it had been "sitting for a while and probably just needed a tune-up." *Id.* at 222. Kesling purchased the Eclipse that day for $2322.88.

---

[1] Hubler has filed an Appellee's Motion to Strike, asking us to strike statements in Kesling's brief that Hubler asserts are based on evidence not specifically designated to the trial court. Kesling has filed an Appellant's Response to Appellee's Motion to Strike. We do not rely on any of the challenged statements in resolving this appeal; therefore, we deny Hubler's motion as moot by separate order issued contemporaneously with this opinion.

Kesling filed a complaint against Hubler in January 2009, which she later amended. The amended complaint made Indiana Deceptive Consumer Sales Act, Indiana Crime Victims Relief Act, and fraud claims.

In April 2010, over two years after Kesling purchased the Eclipse, she had it inspected by Chris Whitsitt. In the inspection report, Whitsitt noted that the Eclipse was covered in dust and appeared to have been sitting for an extended period of time. By comparing the sales order to the odometer, Whitsitt determined that the vehicle had only been driven forty-four miles since Kesling purchased it. Whitsitt discovered numerous problems with the Eclipse, some of which include: (1) a plugged fuel return line that could cause the vehicle to catch on fire while driving; (2) an incorrectly routed air conditioning belt that could cause loss of steering control if the belt were to break or come off the pulleys; and (3) a loose left tie rod that allowed the left front wheel to steer independently to some degree from the rest of the steering system and would lead to total loss of steering control if it were to completely disconnect. In Whitsitt's opinion, the Eclipse had serious problems and was unsafe to drive.

Hubler moved for summary judgment on all of Kesling's claims. Both parties filed briefs and designations of evidence. Included in Kesling's designated evidence was an affidavit from Whitsitt, in which he stated, "Many of the mechanical problems I found were very obvious, including the plugged fuel line and incorrectly routed air conditioner belt, such that they would have been obvious to anyone who would have inspected or serviced the Eclipse at a dealership." *Id.* at 221.

After a hearing, the trial court granted summary judgment to Hubler on all claims except one of the Deceptive Consumer Sales Act claims.  On Kesling's motion, the trial court certified its order for interlocutory appeal.  This Court, however, denied Kesling's motion to accept jurisdiction of the appeal.  The parties apparently settled the remaining claim.  The trial court then certified its summary judgment order as a final judgment. Kesling now appeals.

## DISCUSSION AND DECISION

Kesling contends that the trial court erred by granting summary judgment to Hubler.  When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009).  All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party.  *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007).  We therefore do not resolve issues of fact on appeal; rather, we determine if the designated materials establish that there are issues of material fact.

## I. DECEPTIVE CONSUMER SALES ACT

The provision of the Deceptive Consumer Sales Act at issue here states:

(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

4

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

Ind. Code § 24-5-0.5-3 (2007). The purposes of the Deceptive Consumer Sales Act are to "protect consumers from suppliers who commit deceptive and unconscionable sales acts" and to "encourage the development of fair consumer sales practices." Ind. Code § 24-5-0.5-1(b)(2), (3) (2006); *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998). The Act is to be liberally construed and applied to promote its purposes. Ind. Code § 24-5-0.5-1(a).

In the trial court, Kesling claimed that Hubler made a representation that the Eclipse had the performance, characteristics, uses, or benefits of a typical passenger car and that it was safe to operate. The trial court determined that Hubler made no such representation and granted summary judgment to Hubler.[2]

Kesling now argues that the trial court erred because there are genuine issues of material fact as to whether: (1) Hubler made a representation that the Eclipse had the performance, characteristics, uses, or benefits (2) it did not have, (3) which Hubler knew or should reasonably have known it did not have.

As to the representation, the designated evidence shows that Hubler advertised the Eclipse for $2981 and described it as a "Sporty Car at a Great Value Price." Kesling

---

[2] Kesling points out that a large part of the trial court's order is taken verbatim from Hubler's brief and questions whether the court exercised its own independent judgment. A trial court's practice of adopting a party's proposed findings verbatim "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003). However, given the heavy caseloads of our trial courts, such practice is not prohibited. *Prowell v. State*, 741 N.E.2d 704, 709 (Ind. 2001). Here, the trial court's order was not a wholesale adoption of Hubler's brief. Further, the court denied summary judgment to Hubler on one of its claims. We therefore decline to question the independence of the trial court's judgment.

claims that a trier of fact could reasonably infer from this evidence that Hubler was representing that the vehicle was safe to operate.

Hubler responds that the advertisement is not actionable under the Act because it never stated that the vehicle was safe to operate. Hubler cites *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592 (Ind. Ct. App. 2002), *trans. denied*, for support. In that case, Berghausen alleged that Microsoft distributed Windows through computer manufacturers who were licensed by Microsoft to load copies of the operating system onto the computers they manufactured, and that he bought a computer from a Micro Center store with an inoperable copy of Windows 98 software provided by Microsoft. Berghausen brought a class action against Microsoft alleging, among other claims, that Microsoft, by its conduct, implicitly represented to consumers that its prices were fair and competitive when they were in fact monopolistic. Although Berghausen brought his claim under a provision of the Deceptive Consumer Sales Act not at issue here, that provision likewise requires an act or representation made orally or in writing. This Court concluded that the trial court properly dismissed the claim because Berghausen did not allege any oral or written representation or offer any argument explaining why Microsoft's alleged implicit representations would fit within the definition of deceptive acts. *Id.* at 598.

Hubler claims that, as in *Berghausen*, the representation alleged by Kesling is not based upon a statement made by the supplier. We disagree and find *Berghausen* distinguishable. Berghausen alleged no written or oral representation but instead pointed only to Microsoft's conduct. Here, Kesling points to Hubler's advertisement stating that the Eclipse is a "Sporty Car at a Great Value Price." *Berghausen* simply does not apply.

6

Hubler nonetheless argues that Kesling relies not on the words "Sporty Car at a Great Value Price" but on the inference she makes that Hubler represented that the Eclipse could be safely operated. In effect, Hubler argues that an implied representation cannot be a deceptive act under Indiana Code section 24-5-0.5-3. There is nothing in the statute, however, to indicate that a representation cannot be implied, so long as it is made orally, in writing, or by electronic communication, and to exclude implied representations would not be consistent with the requirement that the Act be liberally construed and applied to promote its purposes. *See* Ind. Code § 24-5-0.5-1(a). For this reason, we cannot agree with Hubler that Kesling's claim is viable only if the advertisement explicitly stated that the Eclipse was safe to operate.

The fact issue here is akin to those in defamation cases where the jury determines the meaning of words used, *see, e.g.*, *Indianapolis Newspapers, Inc. v. Fields*, 254 Ind. 219, 259 N.E.2d 651, 659 (1970) ("It was for the jury to determine if a reasonable reader using words in their ordinary everyday sense would read the articles as implying the meanings alleged . . . ."), and contract cases where the jury determines the meaning of ambiguous contract language, *see, e.g.*, *Shortridge v. Platis*, 458 N.E.2d 301, 306 (Ind. Ct. App. 1984) ("[W]here a written contract is ambiguous, the particular ambiguity should be selected and submitted to the jury under proper instructions."). The question here is whether a fact-finder could reasonably determine that Hubler, in making the statement "Sporty Car at a Great Value Price," implied that the Eclipse was safe to operate. If we conclude that a fact-finder could reasonably determine that Hubler did so, whether Hubler actually did so is a fact question for the jury to answer.

"Value" is defined as "a fair return or equivalent in goods, services, or money for something exchanged" or "relative worth, utility, or importance <a good *value* at the price>." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/value (last visited July 23, 2012). A definition of "sporty" is to "resembl[e] a sports car in styling or performance <a *sporty* sedan>." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/sporty (last visited July 23, 2012). Given these ordinary definitions of "value" and "sporty," we conclude that a fact-finder could reasonably determine that Hubler, in making the statement "Sporty Car at a Great Value Price," implied that the Eclipse was a good car for the price and thus, at a minimum, safe to operate. How else could it have "great value" and be a "sporty car"? "Sporty Car at a Great Value Price" goes beyond a bare "1996 Mitsubishi Eclipse for $2981" and thus can be read to mean more. Because a reasonable fact-finder could determine that Hubler said more than the bare representation yet now wants to be held only to the bare representation, the issue must be submitted to a jury.

Hubler next argues that the Act does not apply to nondisclosures, citing *Lawson v. Hale*, 902 N.E.2d 267 (Ind. Ct. App. 2009). In that case, Lawson was interested in buying a tractor from Hale and asked him about its history. Hale told Lawson that the tractor leaked oil and fuel but did not tell him that it had a cracked engine block. After buying the tractor, Lawson discovered the cracked engine block and learned that Hale had known about it at the time of sale. He sued Hale, alleging, among other claims, a violation of the provision of the Deceptive Consumer Sales Act prohibiting representations that the subject of a consumer transaction "is of a particular standard,

8

quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not." Ind. Code § 24-5-0.5-3(a)(2) (2002). This Court noted that subsection (a)(2) requires a comparison to an objective and independent standard and found that Lawson failed to explain how Hale's disclosure that the tractor leaks oil constituted such a comparison. *Lawson*, 902 N.E.2d at 273. The Court also added that the Act does not apply to nondisclosures, and therefore Hale's failure to tell Lawson about the cracked engine block, while constituting fraud, was not actionable under the Act. *Id.* at 274.

Hubler claims that, as in *Lawson*, the Act does not apply because its failure to inform Kesling that the Eclipse was not safe to operate was a nondisclosure. However, as we have already concluded, a jury must determine whether Hubler made a representation that the vehicle was safe to operate. If a jury determines that Hubler made such a representation, Hubler would have not merely failed to disclose that the Eclipse was unsafe to operate but affirmatively represented that it was safe to operate. *Lawson* is distinguishable on this basis and therefore does not bar Kesling's claim.

We thus conclude that the designated evidence establishes a genuine issue of material fact as to whether Hubler made a representation that the Eclipse was safe to operate, and this fact issue is to be resolved by the trier of fact and not by summary judgment.

As to whether the Eclipse was safe to operate at the time of purchase, the designated evidence includes Whitsitt's inspection report, which detailed numerous problems with the vehicle and concluded that it was unsafe to drive. Hubler notes that

9

Whitsitt's inspection occurred over two years after Kesling purchased the vehicle and that there is no evidence that the vehicle was unsafe to drive at the time of purchase. However, in the inspection report, Whitsitt stated that the Eclipse was covered in dust, appeared to have been sitting for an extended period of time, and had only been driven forty-four miles since Kesling purchased it. This evidence establishes a genuine issue of material fact as to whether the Eclipse was unsafe to drive when Kesling purchased it.[3]

As to Hubler's knowledge, the designated evidence shows that many of the vehicle's problems, including the plugged fuel return line and the incorrectly routed air conditioning belt, would have been obvious to anyone who had inspected the vehicle at a dealership. The designated evidence further shows that Hubler inspected the Eclipse at the time it was accepted as a trade-in. This evidence establishes a genuine issue of material fact as to whether Hubler knew or should reasonably have known that the Eclipse was unsafe to drive at the time Kesling purchased it.

We thus conclude that there are genuine issues of material fact as to whether Hubler made a representation that the Eclipse had the performance, characteristics, uses, or benefits it did not have, which Hubler knew or should reasonably have known that it did not have. The trial court therefore erred by granting summary judgment to Hubler on this claim.

---

[3] Moreover, we note that Hubler's summary judgment memorandum to the trial court listed as an undisputed fact that "[a]t the time Kesling purchased the Eclipse, the Eclipse was in need of major repairs." Appellant's App. p. 44.

10

## II. CRIME VICTIMS RELIEF ACT

Under the Crime Victims Relief Act, a person who suffers a pecuniary loss as a result of certain property crimes may bring a civil action against the person who caused the loss and recover up to three times the actual damages and a reasonable attorney's fee, along with other expenses. Ind. Code § 34-24-3-1 (1998); *Klinker v. First Merchs. Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012). A criminal conviction is not a condition precedent to recovery under this statute. *Klinker*, 964 N.E.2d at 193. Rather, the claimant merely must prove each element of the underlying crime by a preponderance of the evidence. *Id.*

Deception is one of the crimes covered by the Crime Victims Relief Act. Kesling claims that the trial court erred by granting summary judgment to Hubler on her Crime Victims Relief Act deception claim. A person who "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property or the acceptance of employment" commits deception. Ind. Code § 35-43-5-3(a)(9) (1996). "In determining whether an advertisement is false, misleading, or deceptive under subsection (a)(9), there shall be considered, among other things, not only representations contained or suggested in the advertisement, by whatever means, including device or sound, but also the extent to which the advertisement fails to reveal material facts in the light of the representations." Ind. Code § 35-43-5-3(b).

The designated evidence shows that Hubler inspected the Eclipse when it was accepted as a trade-in, should have noticed that it had serious mechanical problems, yet

advertised it on the internet for $2981 and described it as a "Sporty Car at a Great Value Price." This evidence establishes genuine issues of material fact as to whether Hubler disseminated to the public an advertisement that it knew was misleading or deceptive with the intent to promote the sale of the Eclipse.

Hubler nonetheless argues that to reverse the trial court's grant of summary judgment on this claim is to hold that implied in every used car advertisement is a representation that the vehicle is safe to operate. Our holding is not so broad. Had Hubler merely listed the vehicle's specifications and features, Kesling likely would not have a viable case. However, Hubler's advertisement also stated that the Eclipse was a "Sporty Car at a Great Value Price." A fact-finder could reasonably conclude that this is an indication that it is a good car for the price and that, at a minimum, it is safe to operate. A fact-finder could also reasonably conclude that a used vehicle being advertised for $2981 with numerous mechanical issues that could result in total loss of steering control or cause it to burst into flames while driving is not a good car for the price.

We conclude that the trial court erred by granting summary judgment to Hubler on this claim.

### III. FRAUD

Kesling finally contends that the trial court erred by granting summary judgment to Hubler on her fraud claim. Fraud occurs when there is a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the

statement, and the misrepresentation is relied upon to the detriment of the relying party. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 675 (Ind. 1997).

Kesling cites *Lawson*, the tractor case discussed above, for the proposition that "[w]hen a buyer makes inquiries about the condition, qualities, or characteristics of property 'it becomes incumbent upon the seller to fully declare any and all problems associated with the subject of the inquiry.'" 902 N.E.2d at 275 (quoting *Fimbel v. DeClark*, 695 N.E.2d 125, 127 (Ind. Ct. App. 1998), *trans. denied*). She then points to the designated evidence showing that she asked Hubler's salesperson if there was anything wrong with the Eclipse, and he responded that it "probably just needed a tune-up." Appellant's App. p. 222. Kesling reasons that because the designated evidence shows that Hubler inspected the vehicle when it was accepted as a trade-in and should have noticed the serious mechanical problems with the vehicle, and because for purposes of summary judgment we may infer that Hubler's salesperson thus also knew of these defects, Hubler committed fraud when the salesperson failed to disclose these problems.

Hubler does not contest that when a buyer makes inquiries about the condition, qualities, or characteristics of property, the seller must disclose all known problems associated with the subject of the inquiry. Rather, Hubler argues that there is no designated evidence showing that the Eclipse was unsafe to operate on the date of sale, and thus Kesling cannot show that Hubler had a duty to disclose. As discussed above, however, a fact-finder could reasonably conclude from Whitsitt's inspection report that the Eclipse was unsafe to operate on the date of sale.

Hubler also argues that the salesperson's response did not indicate that the only issue with the Eclipse was that it needed a tune-up and cites *First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370 (Ind. Ct. App. 1998), *trans. denied*, for support. That case involved a bank's sale of a building that had experienced water problems from 1979 through 1981. In 1987, Schuyler was interested in buying the building and arranged a tour. Before Schuyler's visit, a bank employee noticed wet carpets and warped floors and discovered that the cause was a broken water heater. Schuyler toured the building and noticed damp carpets and warped floors. When he asked about the cause, the bank employee explained that there was a broken water heater. Schuyler purchased the building and later sued the bank for fraud for failing to disclose the building's history of water problems. A jury found in Schuyler's favor. This Court vacated the judgment for Schuyler, disagreeing with Schuyler that the bank misled him into believing that the broken water heater was the only problem involving water that the building had ever experienced. *Id.* at 1374. Instead, Schuyler specifically asked the bank employee about the cause of the damp carpets and warped floors, and the bank employee accurately responded that the cause was a broken water heater. *Id.* at 1373.

The facts in *Schuyler* are distinguishable. There, the buyer specifically asked about the cause of the damp carpets and warped floors, and the seller accurately responded that the cause was a broken water heater. In contrast, the designated evidence here shows that Kesling generally asked if there was anything wrong with the Eclipse, and the salesperson responded that it "just" needed a tune-up. This is evidence that

14

Hubler told Kesling that the necessity of a tune-up was the only problem with the vehicle. *Schuyler* does not support Hubler's argument.

The designated evidence most favorable to Kesling shows that Hubler inspected the Eclipse, knew that it was unsafe to operate, advertised it as a "Sporty Car at a Great Value Price," told Kesling that it "just" needed a tune-up, and sold the vehicle to her. This evidence establishes genuine issues of material fact as to whether Hubler made a material misrepresentation of fact with knowledge of or reckless disregard for the falsity of the statement and whether Kesling relied on the misrepresentation to her detriment. The trial court therefore erred by granting summary judgment to Hubler on this claim.

## CONCLUSION

For the reasons stated, we reverse the trial court's grant of summary judgment to Hubler on these claims and remand for further proceedings.

Reversed and remanded.

DARDEN, Sr.J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEATHER N. KESLING, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-CT-1031 |
| | ) | |
| HUBLER NISSAN, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

**FRIEDLANDER, Judge, dissenting.**

I believe the advertisement in question does not run afoul of the Indiana Deceptive Consumer Sales Act and therefore respectfully disagree that a question of fact remains that renders Kesling's cause of action on that basis viable.

The provision in question states:

(a) The following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

16

Ind. Code Ann. § 24-5-0.5-3 (West, Westlaw current with all 2012 legislation). The Majority concludes that (1) "Sporty Car at a Great Value Price" arguably conveys the representation that the car was safe to operate, (2) a question of fact remains as to whether the car in question was not, in fact, safe to operate, and (3) a question of fact remains as to whether Hubler Nissan knew it was unsafe, but nonetheless implied that it was (*see* (1) above). To survive summary judgment, Kesling was required to establish all three of these propositions. I believe Kesling's case fails at (1).

Unlike the Majority, I cannot agree that "Sporty Car at a Great Value Price" says anything at all about the car's drivability – much less that it warrants that the vehicle is in a condition such that it may be safely operated. Rather, it merely says what it says, i.e., (1) that the car is "sporty," which is commonly understood to mean resembling or styled after a sports car; and (2) that the purchase price is low relative to the vehicle's market value. Leaving aside the fact that this very generic advertising phrase is widely regarded as typical used-car-sales puffery that conveys virtually nothing about the particular vehicle to which it is attached, the phrase is devoid of content relative to the vehicle's operating status. In my view, the Majority's conclusion that the phrase may be interpreted to infer that the vehicle may be safely operated in its current condition is simply unreasonable. I would affirm summary judgment in favor of Hubler Nissan.